**WILSHIRE & WESTERN SANDWICHES, Inc. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 12079.

United States Court of Appeals
Ninth Circuit.

June 23, 1949.

Swarts, Tannenbaum, Ziffren & Steinberg and Jacob Shearer, Los Angeles, Cal. (David Tannenbaum, Jacob Shearer, Mitchell Aaronson, Los Angeles, Cal., of counsel), for petitioner.

Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Sumner M. Redstone, Sp. Assts. to Atty. Gen., for respondent.

Before MATHEWS, HEALY and ORR, Circuit Judges.

ORR, Circuit Judge.

In its income tax returns for the years 1942 and 1943 petitioner deducted from its gross income sums claimed by it to have been paid as interest on an indebtedness evidenced by notes executed by it. The authority to make the deduction was claimed under § 23(b) of the Internal Revenue Code.[1] The Commissioner of Internal Revenue disallowed the deductions and determined deficiencies. Petitioner asked for a redetermination by the Tax Court. That court sustained the Commissioner. We have for review the Tax Court's decision.

The question presented is: Were certain advances of money made to petitioner by its stockholders loans or contributions to capital? Petitioner, after receipt of the money from the stockholders, executed promissory interest-bearing notes in favor of each contributing stockholder in the amount by each contributed, and made delivery.

The Tax Court made findings in narrative form which are in substance as follows:

Petitioner was incorporated on March 24, 1941, for the purpose of engaging in the restaurant business. Its four incorporators later became its sole shareholders. Their original intention was to finance the construction of the restaurant out of advances made by them in the amount of $30,000, half of which was to be capital stock contribution and half a loan. The individuals desired to be in a position to participate with general creditors for part of their investment in the event petitioner's business was not successful. In addition, they regarded a loan to be a better investment than stock to obtain returns on and repayment of their capital outlay. They decided against borrowing from a bank because they considered the receipt of interest desirable. Some of the same individuals had entered into similar transactions with other corporations from the same motives.

In April, 1941 a lot was leased by one of the incorporators and assigned to petitioner. Construction on the restaurant was begun soon thereafter. Between May and November of 1941 the incorporators advanced various sums of money, pursuant to plan, eventually totaling $55,000. No receipts were given by petitioner for these advances. In July, 1941 petitioner filed an application with the Department of Investment of the State of California for permission to issue stock. The application recited that petitioner proposed to borrow from the stockholders an additional amount to complete the building and to equip it for operation.

In November, 1941 the restaurant opened for business. A few days thereafter a

---

[1] Sec. 23 of the Internal Revenue Code: "Sec. 23. Deductions from gross income. In computing net income there shall be allowed as deductions: * * * "(b) Interest. All interest, paid or accrued within the taxable year on indebtedness, except on indebtedness incurred or continued to purchase or carry obligations (other than obligations of the United States issued after September 24, 1917, and originally subscribed for by the taxpayer) the interest upon which is wholly exempt from the taxes imposed by this chapter." 26 U.S.C.A. § 23.

meeting of the board of directors was held at which time it was decided that of the $55,000 paid by the incorporators $25,000 would be taken as loans and $30,000 would be taken as capital contributions for which stock was issued. Promissory notes, maturing in two years with interest at 6%, payable quarterly, were issued for the loans. No interest was in fact paid until December 1943, when it was paid through November 1943. The principal was paid in installments of $10,000 each on April 21, 1943 and May 23, 1944, and $5,000 on March 23, 1945, at which time the remaining interest was also paid.

The amount of the loans was not set up in the corporation's books as indebtedness because the accountant was not informed that part of the advances made by the incorporators was made as loans. A balance sheet prepared on that misinformation was signed by the president of the corporation, who was one of its four incorporators, for the purpose of preparing income tax returns for 1941, but it was not read by him. In 1942 another accountant, who was cognizant of the loans, was employed to examine the books of petitioner, and the bookkeeping error was corrected.

One of the incorporators testified that he expected to be repaid the loan if petitioner had funds for that purpose, and another testified that he expected to be paid out of current earnings and would not have insisted upon payment if it would cause financial hardship to petitioner. The interest and principal was in fact paid from earnings. No dividends were declared by the corporation, which had an earned surplus.

Ordinarily the facts as thus presented would spell out a transaction that would justify deductions for interest paid. In them we find all the elements of a debtor and creditor relationship, viz., meeting of the minds as to the intent of the nature of the advance; transfer of the consideration and a promise to pay evidenced by negotiable promissory notes presenting an unconditional and legally enforceable obligation for the payment of money. It is apparent that had the dealings been with an independent third party no question as to the propriety of the interest deduction

could have been raised. The Commissioner and Tax Court, however, take the position that when the true situation is uncovered it is not that simple. The Commissioner and Tax Court think the circumstances compel the conclusion that the stockholders, in advancing funds to the corporation, were merely contributing to the capital thereof in order to assist in launching the venture; that the debtor and creditor relationship was an afterthought, carrying an implication of income tax evasion. We reach a contrary result.

■ It is not contended that a corporation is without power to enter into a debtor and creditor relationship with its stockholders. The intent of the parties as to the nature of the transaction controls.

The Tax Court found the parties intended to make advances for stock and loans on an equal basis, a plan which was subsequently modified only in the proportion of stock and loans. Yet the Tax Court, from inferences drawn by it from other facts and circumstances, seems to have concluded that the original intent of the parties was nullified. The facts thus relied on appear to be the following:

That the "loans" were not secured; that no initial receipts were given for the advances; that the division between the amounts of the loan and the capital stock was slightly modified from the first plan; that the amount loaned by each incorporator was in proportion to his holdings of stock; that interest was not paid when due; that the final payment of principal was late; that the initial book entries did not treat the advances as loans; and that the payments of interest and principal were made from the profits of petitioner, as the incorporators expected.

No conclusion inimical to the creation of a debtor-creditor relationship can justifiably be drawn from the manner in which the book entries were made, since it was found that the error was the result of the accountant's misinformation, and that the entries were corrected when detected.

■ To us other actions complained of seem consistent with a valid debtor-creditor relationship. Under the circumstances no adverse inference should be drawn from

the failure of the stockholders to demand payment immediately when due. The same strict insistence on payment on due date as would be the case if a bank were the creditor, should not be expected. It is not suggested that the sole shareholder of a corporation cannot become its creditor. See, Maloney v. Spencer, 9 Cir., 172 F.2d 638. The effect of a lending and investing transaction giving creditors, as stockholders, proprietary interest in proportion to their loans, subjects the transaction to close scrutiny, but does not, as a matter of law, require the transaction to be treated as a stock investment, regardless of intent.

We have placed especial emphasis on the finding of the Tax Court as to the intent of the parties at the time the transaction was entered into. Respondent construes this finding to mean that the parties intended that half their investment be in the form of notes and half in the form of stock. We cannot agree. The Tax Court clarified the meaning it intended to convey in speaking of the intent of the parties by finding that they (the parties) wished to participate with general creditors and regarded a loan a better investment than stock. "It is often said that essential difference between a creditor and a stockholder is that the latter intends to make an investment and take the risks of the venture, while the former seeks a definite obligation, payable in any event." Commissioner of Internal Revenue v. Meridian & Thirteenth Realty Co., 7 Cir., 132 F.2d 182, 186.

Respondent asserts that the transactions under consideration here have few of the characteristics of the people dealing at arms length. Whatever view may be taken as to the number of those characteristics, the controlling fact remains that those which appear are the essentials of a bona fide transaction. In reaching this conclusion we think we are dealing with substance and reality and not mere form, a requirement in the field of taxation.

While it may be said that there are features looking both ways as to whether the advancements in this case were loans or stock purchases those sustaining a conclusion that the transaction was a loan greatly preponderate, chief of which as we have stated, is the intent of the parties at the time of entering into the transaction, which stamps it as a loan, the interest on which was deductible under § 23(b).

Reversed.