363 F.2d 826
 66-2 USTC P 9586
 Herold FELLINGER and Clara Fellinger, Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
Maurice BERNSTEIN and Irene Bernstein, Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
The HIPPODROME BUILDING CO., Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
Edwin I. BAMBERGER and Rita Bamberger, Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
 Nos. 16391, 16392, 16644, 16645.
 United States Court of Appeals Sixth Circuit.
 Aug. 5, 1966.
 
 Henry C. Harvey, Cleveland, Ohio, Bruce J. Havighurst, Jones, Day, Cockley & Reavis, Cleveland, Ohio, Elmer J. Babin, Cleveland, Ohio, on beief, for appellants and petitioners.
 Lawrence B. Silver, Department of Justice, Washington, D.C., John B. Jones, Jr., Acting Asst. Atty. Gen., Lee A. Jackson, Joseph Kovner, Attorneys, Department of Justice, Washington, D.C., on beief; Merle M. McCurdy, U.S. Atty., Cleveland, Ohio, of counsel, for appellee ans respondent.
 Before O'SULLIVAN and CELEBREZZE, Circuit Judges, and CECIL, Senior Circuit Judge.
 O'SULLIVAN, Circuit Judge.
 
 
 1
 The question involved is whether $350,000 advanced by taxpayer-appellants Fellinger, Bernstein and Bamberger to taxpayer-appellant The Hippodrome Building Company, a corporation, in exchange for its debentures in substantially that face amount, was a bona fide loan to the company or was an investment of equity capital. The taxpayers treated the debentures as evidence of debt; the holders thereof treated the interest paid thereon as taxable income, but reported no income for payments made on the principal; the company deducted from its income the interest paid on the debentures, and treated payments of principal as retirement of debt. The Commissioner, asserting that the debentures represented equity investment, assessed deficiencies against the holders by including in the income of the Fellingers, Bernsteins and Bambergers, as dividends, all payments made thereon, whether of interest or principal, and by disallowing the deductions taken by the Hippodrome corporation for the interest paid on such debentures.
 
 
 2
 Appellants Fellinger and Bernstein paid the asserted deficiencies and sued in the District Court for a refund. Petitioners Hippodrome Company and Bamberger took their cases to the Tax Court. Judge Kalbfleisch in the District Court, and Judge Dawson in the Tax Court both arrived at the conclusion that the instruments represented equity interests, and upheld the Commissioner. The petition to us for review of the Tax Court decision and the appeal from the District Court judgment were consolidated for hearing in this Court. The facts are as follows: Since 1947, Stuart Scheftel and Alfred G. Vanderbilt had owned all the stock of the Hippodrom Building Company of Cleveland, Ohio. The capital stock of the latter consisted of: 11,350 First Preferred Shares and 3,650 Second Preferred Shares, all held by Vanderbilt; 5,000 Third Preferred Shares held by Scheftel; and 5,000 Common Shares divided equally between Scheftal and Vanderbilt. Until all of the First and Second Preferred Shares were retired ($1.5 million, par value), Vanderbilt was to have control of the company; thereafter, the voting was to be 50-50. No dividends were to be paid to Scheftel until all of Vanderbilt's preferred stock was redeemed. The principal asset of the company was the Hippodrome Building, located in downtown Cleveland, and containing office and shop space, and a theater.
 
 
 3
 In 1953, Vanderbilt wished to liquidate the Company and withdraw his capital. Shceftel desired to preserve the business, and sought to work out an agreement whereby the company would purchase Vanderbilt's interest. Vanderbilt agreed to accept $840,000 in cash and $285,000 in a second mortgage, in effect selling for $1.125 million his right to receive the first $1.5 million of liquidation proceeds. At this time, the company had cash reserves of about $240,000 and the building was subject to a mortgage of $1.25 million. $250,000 was obtained by increasing this mortgage to $1.5 million. This amount plus the corporation's $240,000 cash reserve left it needing $350,000 to complete the required payment of $840,000 cash to Vanderbilit.
 
 
 4
 After two years of unsuccessful efforts to obtain from commercial lenders a loan of the needed $350,000, Scheftel was introduced to Elmer Babin, a Cleveland lawyer and investor. Babin made a proposition whereby he (on behalf of a group to be assembled by him) would advance $350,000 to the corporation in exchange for $349,750 in debentures and 100 shares of new Class A common stock at $2.50 per share. The corporate structure of the corporation was to be rearranged by redeeming and retiring all of Vanderbilt's shares, by Scheftel contributing to the corporation his Third Preferred shares as capital surplus, and by Scheftel exchanging his 2500 shares of common for 100 shares of new Class B common stock. Thus rearranged, the total stock ownership was to be evidenced by 100 shares of Class A owned by the Babin group and 100 shares of Class B. owned by Scheftel. Classes A and B would each elect two of four directors. The Babin investors were to receive one share of Class A stock for each $5,000 in debentures, with Babin and one Irving Hexter receiving 20 and 10 extra shares, respectively, for arranging the transaction. Class A stock was to be entitled to prior cumulative dividends of $500 per share per year after the retirement of the debentures. This would be paid out of surplus or net profits and any further dividends would be divided equally between the holders of the Class A and Class B stock.
 
 
 5
 On October 26, 1955, the plan was carried out; Vanderbilt was paid off; the $350,000 of debentures and the Class A stock were delivered to the Babin group (which included the individual taxpayer-appellants); and Scheftel received the Class B stock. The debentures bore interest at 4% Per annum, payable semiannually, with the principal payable ten years from date. The underlying agreement provided that the 'principal' of and the 'interest' on the debentures would be payable only out of 'available income' and there was no provision for a sinking fund. Because detailed facts are set out in the opinions of the Tax Court and the District Court, we need not here repeat all of the contractual arrangements which, in our view put the Babin group in substantial ownership control of the corporation. That the Babin group was thinking in terms of risk capital to be multiplied by speculative future profits rather than in terms of a secured loan returning a modest but assured interest, is illustrated by Babin's letter inviting participation. He stated:
 
 
 6
 'What makes the deal attractive is that for each $10,000 debenture, you will receive at a cost of ony $2.50 one share of Class A common stock having an intrinsic value of $7,000.00 and entitling you to cumulative preferred dividends of $1,000 per year plus 10% Of all common dividends.'
 
 
 7
 The final agreement provided for 100 shares of Class A instead of 50 as contemplated by the letter. Thus each investor received 2 shares of Class A stock with each $10,000 debenture. Babin also told his investors 'all cash earnings of the company after mortgage requirement will be used to retire the debentures. In my opinion this should take less than five years.' During the tax years involved, 1956 through 1959, substantial payments were made on the principal of the debentures. In one of those years the debenture holders consented to, and as holders of Class A stock received, a $25,000 dividend on the Class A stock. This dividend was presumably to offset of reduction in the rent payable by Scheftel for the theater in the Hippodrome Building.
 
 
 8
 The Tax Court and the District Court sustained the Commissioner holding that the debentures did not represent bona fide indebtedness. Fellinger v. United States, 238 F.Supp. 67 (N.D.Ohio E.D. 1964); Bamberger v. C.I.R., T.C.Memo 1965-25 (Feb. 11, 1965). We affirm.
 
 
 9
 The question of whether the debentures represented bona fide indebtedness was one of fact for the Tax Court and the District Court. We may not set aside their findings unless they were clearly erroneous. Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960); R. C. Owen Co. v. Commissioner of Internal Revenue,351 F.2d 410 (CA 6, 1965) cert. den. 86 S.Ct. 1272; Foresun v. Commissioner of Internal Revenue, 348 F.2d 1006 (CA 6, 1965); Commercial Credit Rural Elec. Corp. v. Commissioner of Internal Revenue, 319 F.2d 485 (CA 6, 1963); Gooding Amusement Co. v. Commissioner of Internal Revenue, 236 F.2d 159 (CA 6, 1956). These findings were not clearly erroneous. Both courts were required to make their findings from an appraisal of 'all surrounding facts and circumstances.' Moughon v. Commissioner of Internal Revenue, 329 F.2d 399, 401 (CA 6, 1964).
 
 
 10
 The Tax Court and the District Court made such appraisal and there was ample evidence in each of the records before them to support their respective findings that the involved instruments represented equity investment rather than true indebtedness.
 
 
 11
 Judgments affirmed.