**J. S. BIRITZ CONSTRUCTION CO.,**
Petitioner,

v.

**COMMISSIONER OF INTERNAL REVENUE,** Respondent.

Joseph S. **BIRITZ** and Dorothy Biritz,
Petitioners,

v.

**COMMISSIONER OF INTERNAL REVENUE,** Respondent.

Nos. 18816, 18817.

United States Court of Appeals
Eighth Circuit.

Dec. 12, 1967.

Oliver W. Schneider, Clayton, Mo., for petitioners; Donald H. Whaley, Clayton, Mo., on the brief.

Robert J. Campbell, Atty., Dept. of Justice, Washington, D. C., Mitchell Rogovin, Asst. Atty. Gen., Dept. of Justice, Lee A. Jackson, Harry Baum, Robert H. Solomon, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before VAN OOSTERHOUT, GIBSON and HEANEY, Circuit Judges.

FLOYD R. GIBSON, Circuit Judge.

This is a petition to review two decisions of the Tax Court, holding that a note taken by a sole stockholder from his corporation in exchange for some land represented a contribution to capital rather than a debt. The decisions concern a single issue and were consolidated for purpose of trial and for review.

The Tax Court in an opinion by Scott, J., sustained the determination of the Commissioner of Internal Revenue increasing the taxable income of petitioners, Joseph and Dorothy Biritz, for the calendar year 1960 by $15,290, as additional dividend income resulting from the payment of a $20,653 demand note given by the corporation to Biritz in 1954. The total amount paid could not be treated as a dividend distribution as there was only available for dividend distribution (out of earnings and profits for the period of the corporation's existence) the amount assessed. Likewise, the Tax Court sustained the Commissioner's disallowance of interest deductions of $1239

claimed by the petitioner corporation for its fiscal years 1959 and 1960, and treated these payments as non-deductible dividend distributions.[1]

█ A determination of whether an advance made by a stockholder to a closed corporation creates a true debtor-creditor relationship or actually represents a contribution to capital depends upon the particular facts of each case. John Kelley Co. v. Commissioner of Internal Revenue, 326 U.S. 521, 66 S.Ct. 299, 90 L. Ed. 278 (1946); Gooding Amusement Co. v. Commissioner of Internal Revenue, 236 F.2d 159 (6 Cir. 1956), cert. denied 352 U.S. 1031, 77 S.Ct. 595, 1 L.Ed.2d 599. It is, therefore, necessary to set out in some detail the factual situation and background of the transaction under review.

Joseph Biritz began working in the building trades as a carpenter in 1934. From 1938 until 1949, except for time spent in the Armed Forces, Biritz built homes in partnership with another person for various real estate companies. The homes were financed by the real estate companies that contracted for them. In 1949 Biritz began to conduct his business as a sole proprietor, which business consisted principally of carpentry work in connection with building homes, repair work, room additions and millwright work. Financing of the homes built was supplied by the buyers who made partial payments as the work progressed. However, on minor repairs or small jobs Biritz would finance the work and render his bill on completion. It was his policy to pay subcontractors and suppliers within thirty days and take advantage of discounts offered.

On November 21, 1952 Biritz and his wife acquired a tract of land containing 10.847 acres for $21,386. From the date of acquisition until the incorporation of J. S. Biritz Construction Co., $5,924 was expended improving the property. A friend of Biritz suggested that he incorporate in order to limit his personal liability. Upon discussing this matter with his lawyer, who also approved of incorporating, the corporation was organized under the laws of the State of Missouri. The assets and liabilities of the Joseph Biritz sole proprietorship were transferred to the corporation along with the real estate mentioned in exchange for capital stock and the promissory note in question. The assets transferred where valued at $30,765, the principal asset being the tract of improved land valued at $27,310 (which was apparently the cost basis). Minor liabilities were assumed and no cash was paid into the corporation. The corporation issued 996 shares of its $10 par value common stock to Biritz, and two qualifying shares, necessary under Missouri law, were issued to Dorothy Biritz and to her father. As part of the same corporate financing the corporation issued a demand negotiable promissory note to Joseph Biritz dated March 6, 1954 in the amount of $20,653 bearing interest at the annual rate of 6 per cent. This note was not secured. The note was set up on the corporate records as a note payable and interest thereon was paid annually at the rate of 6 per cent in cash or by the issuance of another promissory note, which in turn was later paid. The corporation deducted the annual interest paid on the note on its tax return as interest paid under § 163 (a) of the Internal Revenue Code (26 U.S.C. § 163(a)).[2]

After incorporation additional amounts were spent in developing the land, which amounts were advanced by Biritz and carried on the corporation's books as "J. S. Biritz Account." At the close of the corporation's fiscal year ending February 28, 1955 the corporation owed Biritz $35,680 on this account. Of this amount $31,114 represented expend-

---

1. The memorandum findings of fact and opinion of the Tax Court (T.C. Memo. 1966—227) are not officially reported.

2. 26 U.S.C. § 163(a) reads:
"(a) General rule.—There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness."

itures made by Biritz personally to improve the land, which was platted as "Biritz Drive." By the end of fiscal year 1956 the "J. S. Biritz Account" had been reduced to $7,821 and the account continued to reduce in amount until the end of fiscal year 1960 when only $1,132 was shown as owing Biritz.

From the time of incorporation until February 1960 the corporation completed construction of and sold 11 residences on Biritz Drive, 7 of these residences were constructed under contract after the lots were sold, 3 were fully constructed prior to sale, and 1 was partially constructed prior to sale. The corporation did not obtain construction loans on any of these houses. The majority of the homes built were financed by means of earnest money and progress payments made by the purchasers. Some costs of construction were defrayed by notes given by Biritz as well as advances made to the corporation on open account.

In addition to the development of Biritz Drive, the corporation continued to do repair work, room additions and millwright work along the same general lines as had been done by Biritz as a sole proprietor. The volume of business of the corporation averaged about $130,-000 per year from 1954 through fiscal 1960. The sales of homes and lots averaged about $80,000 per year while income resulting from remodeling and repairing averaged about $50,000 per year, although in fiscal 1955 and 1959 income from remodeling and repairing totaled more than from the sale of homes and lots.

The corporation's books for the period 1954 through 1960 showed notes (not at issue here) were issued to J. S. Biritz and Dorothy Biritz for such purposes as office rent, officers' salaries, etc., which notes generally were paid off in the year issued. The corporation continued the policy instituted by Biritz of paying all trade accounts within thirty days.

On February 10, 1960, the promissory note issued by the corporation in 1954 to Joseph Biritz in the amount of $20,-653 was paid to him upon demand in order that he might embark on another business venture. The Tax Court concluded that the payment of the note to Biritz was a dividend distribution to the extent of available corporate earnings, finding that the note did not represent a true indebtedness but was rather an equity investment by Biritz in the corporation.

The rationale of the Tax Court opinion was that Biritz intended to place all of the assets transferred to the corporation at the date of its incorporation at the risk of the corporate business and that Biritz intended that the note was to be paid "only if and when the corporation had sufficient profits to make the payment without handicapping the [corporate] operation." The Tax Court pointed out that the corporation had no working capital and could only obtain working capital from Biritz or from mortgaging the land transferred to it, and found significant the fact that Biritz did not take back a mortgage on the land. The Tax Court found that the corporation could operate on its limited initial assets only because of Biritz's assistance and concluded that Biritz "intended that the corporation make payment of interest or principal on this note only if the business were successful and able to pay such amounts without curtailing its business activities"; that the successful development of the land by the corporation was the only circumstance under which Biritz "could reasonably anticipate payment of his note", and that "The land which petitioner transferred to the corporation was needed to get the corporation into operation as it in fact did operate. This fact indicates that the note given petitioner for the land represented money at the risk of the corporate business." And then the Tax Court concluded "that under the circumstances here shown the entire properties transferred to the corporation were in the nature of a contribution to the corporate equity capital at the risk of the corporate business", and decided the note represented an equity investment and not an indebtedness for federal tax purposes.

The Commissioner contends that whether the note represents a true indebtedness for federal income tax purposes is essentially a factual question upon which the taxpayer has the burden of proof, citing John Kelley Co. v. Commissioner of Internal Revenue, supra; Crown Iron Works v. Commissioner of Internal Revenue, 245 F.2d 357 (8 Cir. 1957); Arlington Park Jockey Club v. Sauber, 262 F.2d 902, 905 (7 Cir. 1959); and submits that the findings of the Tax Court on a factual issue should not be disturbed unless clearly erroneous. Commissioner of Internal Revenue v. Dubenstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960); Crown Iron Works v. Commissioner of Internal Revenue, supra.

■■ We agree that since the Commissioner has made the assessment the taxpayer has the burden of proving the transaction in question was a bona fide loan. We do not think, however, that the issue presented is solely or even essentially a factual one but is a mixed question of law and fact. The factual question is intertwined with the applicable principles of law that should be accorded recognition in making the factual determination. See concurring opinion of Waterman, J., in Gilbert v. Commissioner of Internal Revenue, 248 F.2d 399, 408 (2 Cir. 1957), cert. denied 359 U.S. 1002, 79 S.Ct. 1139, 3 L.Ed.2d 1030 (1950).

A brief look at the scope of review provisions in tax cases is helpful at this point. In Dobson v. Commissioner of Internal Revenue, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248 (1943), the Supreme Court enunciated the rule that questions of fact or mixed questions of law and fact having a " 'warrant in the record' and a reasonable basis in the law" decided by the Tax Court were not reviewable by the Courts of Appeals under the applicable review provision of the 1926 Revenue Act, which provided on review from the Board of Tax Appeals (now the Tax Court) " * * * such courts shall have power to affirm or, if the decision of the Board is not in accordance with law, to modify or to reverse the decision

of the Board * * * " Revenue Act of 1926, § 1003(b), 44 Stat. 9, 110, Internal Revenue Code, § 1141(c) (1). This standard of review was reaffirmed in John Kelley Co. v. Commissioner of Internal Revenue, 326 U.S. 521, 526–529, 66 S.Ct. 299, 90 L.Ed. 278 (1946).

■ However, Congress in 1948 amended 26 U.S.C. § 1141(a) by inserting in paragraph (a), which gives the courts of appeal exclusive jurisdiction to review decisions of the Tax Court (with an exception not pertinent to this issue), the following clause setting forth the standard of review, "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." (Title 26 U.S.C. § 1141 now appears as § 7482 of Title 26 U.S.C.). This makes applicable Rule 52(a), Fed. R.Civ.P. which also imposes the "clearly erroneous" standard of review on factual issues. However, as pointed out in Judge Waterman's concurring opinion in Gilbert v. Commissioner of Internal Revenue, supra, the issue of whether advances made to a corporation gives rise to debts as that term is used in § 23(k) of the Internal Revenue Code is a mixed question of law and fact.

The advancements of moneys or equivalent assets to a closely held corporation in a transaction that is alleged or intended to create a debtor-creditor relationship has given rise to much litigation. The Commissioner generally takes the position that these advances constitute contributions to equity capital and are not true loans for federal tax purposes. The tax consequences are manifest to those knowledgeable in accounting, tax laws, and sophisticated corporate operations. As noted in John Kelley Co. v. Commissioner of Internal Revenue, 326 U.S. 521, 530, 66 S.Ct. 299, 90 L.Ed.2d 278 (1946), interest and dividends are well understood words and need no further definition.

One line of cases represented by *Kelley* deals with situations where the debentures or loan agreements contain both elements of an indebtedness and elements of an equity stock. These are common-

ly referred to as "hybrid" securities, and another line of cases deals with actual moneys or assets advanced and set up as loans on the corporate books either by way of open account or notes payable. We are here concerned only with the question of whether a loan actually was in form and substance made to the corporation. However, both lines of cases contain reasoning and language dealing with the ultimate issue of whether a debt-or-creditor relationship was established under the circumstances in each case.

None of the reported cases lays down any comprehensive rule by which the question presented may be decided in all cases and the decision in each case turns upon the particular facts of that case. John Kelley Co. v. Commissioner of Internal Revenue, supra; Gilbert v. Commissioner of Internal Revenue, 248 F.2d 399 (2 Cir. 1957), cert. denied 359 U.S. 1002, 79 S.Ct. 1139, 3 L.Ed.2d 1030 (1959); Gooding Amusement Co. v. Commissioner of Internal Revenue, 236 F.2d 159 (6 Cir. 1956).

As noted in *Gooding* at 165 of 236 F.2d:

" * * * [M]ost of the authorities are of little value in the determination of a particular case, for the reason that 'each depends for its solution upon its own peculiar facts,' to be determined in the light of all the surrounding circumstances." Citations omitted.

Thus, little purpose would be served by a minute comparison of the myriad details that distinguish the reported cases. The Commissioner properly recognized in his brief:

"Cases in this area of the tax law have been characterized 'by a minute comparison of, and effort to differentiate * * *' John Kelley Co. v. Commissioner [of Internal Revenue], supra, [326 U.S. 521] p. 530 [66 S.Ct. 299, 90 L.Ed. 278]. Consequently, most of the authorities are of little value in the determination of a particular case since each depends for its solution upon its own peculiar facts."

There are a number of cases dealing with loan transactions that support the Commissioner's contention and have upheld the Commissioner in treating what were in form loans to corporations as capital contributions. Without attempting to list all of them, the following are representative and are considered among the leading cases on the issue: Brake & Electric Sales Corp. v. United States, 287 F.2d 426 (1 Cir. 1961); Gooding Amusement Co. v. Commissioner of Internal Revenue, supra; Wood Preserving Corporation v. United States, 347 F.2d 117 (4 Cir. 1965); Arlington Park Jockey Club v. Sauber, 262 F.2d 902 (7 Cir. 1959); McSorley's, Inc. v. United States, 323 F.2d 900 (10 Cir. 1963); Moughon v. Commissioner of Internal Revenue, 329 F.2d 399 (6 Cir. 1964); Charter Wire, Inc. v. United States, 309 F.2d 878 (7 Cir. 1962).

On the other hand there are a number of cases supporting petitioner's contention that the transaction was in form and substance a loan, creating a true debtor-creditor relationship rather than an equity investment. These cases are: Rowan v. United States, 219 F.2d 51 (5 Cir. 1955); Gloucester Ice & Cold Storage Co. v. Commissioner of Internal Revenue, 298 F.2d 183 (1 Cir. 1962); Nassau Lens Co. v. Commissioner of Internal Revenue, 308 F.2d 39 (2 Cir. 1962); Byerlite Corp. v. Williams, 286 F.2d 285 (6 Cir. 1960); Kraft Foods Co. v. Commissioner of Internal Revenue, 232 F.2d 118 (2 Cir. 1956); Miller's Estate v. Commissioner of Internal Revenue, 239 F.2d 729 (9 Cir. 1956); Wilshire & Western Sandwiches v. Commissioner of Internal Revenue, 175 F.2d 718 (9 Cir. 1949); Ruspyn Corporation v. Commissioner of Internal Revenue, 18 T.C. 769 (1952).

Most of the cases in attempting to assess the true nature of a claimed loan transaction use varying indicia in an attempt to determine the true and actual nature of a transaction. These indicia have varying degrees of relevancy, depending on the particular factual situation and are generally not all applicable

to any given case. Indicia used are: (1) Whether the corporation is so grossly under-capitalized that the loans are in fact needed for capital purposes and are actually intended to be risked capital rather than a loan. Burr Oaks Corporation v. Commissioner of Internal Revenue, 365 F.2d 24 (7 Cir. 1966), cert. denied 385 U.S. 1007, 87 S.Ct. 713, 17 L.Ed.2d 545; Aqualane Shores, Inc. v. Commissioner of Internal Revenue, 269 F.2d 116 (5 Cir. 1959) We do not think these so-called "thin capitalization" cases are relevant to this situation as the capital contributed of approximately $10,-000 is substantial in relation to the total debt structure of approximately $20,000, creating a debt ratio of 2 to 1. As stated in *Kelley*, supra, at p. 526 of 326 U.S., at p. 302 of 66 S.Ct.:

> "As material amounts of capital were invested in stock, we need not consider the effect of extreme situations such as nominal stock investments and an obviously excessive debt structure."

Again as reasoned in Miller's Estate v. Commissioner of Internal Revenue, 239 F.2d 729 at 734 (9 Cir. 1956):

> "We know of no rule which permits the Commissioner to dictate what portion of a corporation's operations shall be provided for by equity financing rather than by debt. It is common knowledge that the choice of procedures in this regard will vary from corporation to corporation and we think that it cannot be said that any particular method of issuance of stock and incurrence of indebtedness can be labeled as 'normal', and hence subject to approval by the Commissioner.";

(2) Whether the purported loans were made in proportion to equity holdings. Charter Wire, Inc. v. United States, supra; McSorley's, Inc. v. United States, supra; Arlington Park Jockey Club v. Sauber, supra. We do not think this criteria is applicable to a sole stockholder corporation as any loan or advance made by a sole stockholder would be in proportion to his stockholdings. It could have relevancy where there are multiple stockholders, but even there as held in Wil-shire and Western Sandwiches v. Commissioner of Internal Revenue, 175 F.2d 718, at p. 720 (9 Cir. 1949):

> "It is not contended that a corporation is without power to enter into a debtor and creditor relationship with its stockholders. The intent of the parties as to the nature of the transaction controls.";

(3) Whether the repayment of the loan was predicated on the success of the venture. Burr Oaks Corp. v. Commissioner of Internal Revenue, supra; McSorley's, Inc. v. United States, supra; (4) Whether there was a fixed date for payment of the note and a reasonable expectation of payment by that date. United States v. South Georgia Ry. Co., 107 F.2d 3 (5 Cir. 1939); (5) Whether the note was subordinated to other corporate debts. Nassau Lens Co. v. Commissioner of Internal Revenue, supra; O. H. Kruse Grain & Milling v. Commissioner of Internal Revenue, 279 F.2d 123 (9 Cir. 1960); (6) Whether third parties would have made the loan under the same conditions. Nassau Lens Co. v. Commissioner of Internal Revenue, supra; Wilbur Security Co. v. Commissioner of Internal Revenue, 279 F.2d 657 (9 Cir. 1960); (7) Whether the claimed loan was secured by a mortgage or otherwise; (8) Whether a provision was made for a sinking fund to retire the loan. Fellinger v. United States, 363 F.2d 826 (6 Cir. 1966); Moughon v. Commissioner of Internal Revenue, supra. A sinking fund would be in order for a relatively large debenture issue but appears to be unwonted in this type of case; (9) Whether the person making the purported loan participated in the management of the corporation. Wilbur Security Co. v. Commissioner of Internal Revenue, supra. In closely held or one-man corporations the stockholder always participates in management; (10) Whether the corporation had a large proportion of debt to equity. The proportion here is clearly within permissible limits.

It may readily be seen that several of the above indicia if applied to a

one-man corporation would automatically rule out a stockholder making any loan advances to his corporation. However, we do not think that the Commissioner has the authority to say what proportion of a person's assets should be committed to a particular enterprise and further that there is no statutory bar or law that prohibits a sole stockholder or stockholders of a closely held corporation from creating a true debtor-creditor relationship with the corporation, if the particular transaction under question was actually made as a loan, treated as a loan and was both in form and in substance a loan. As stated in Rowan v. United States, 219 F.2d 51, 55 (5 Cir. 1955):

"But the court also recognizes that, entirely without reference to the incidence of taxes stockholders of corporations have always been free to commit to corporate operations such capital as they choose and to lend such additional amounts as they may elect to assist in the operation if that is their true intent, always thus reserving the right to share with other creditors a distribution of assets if the enterprise fails."

The Court in Gloucester Ice & Cold Storage Co. v. Commissioner of Internal Revenue, supra, held $100,000 of 20-year non-subordinate debenture bonds were debt obligations and not a capital investment as held by the Tax Court. In giving effect to the unambiguous form and substance of the transaction, the Court said at p. 185 of 298 F.2d:

"There being no element of subterfuge or artifice to escape tax consequences, the bonds speak for themselves. And they speak in clear and unmistakable terms of indebtedness. Therefore there are no disputed questions of fact relevant to the issue to be decided. Inferences cannot avail against patent facts."

Again in Nassau Lens Co. v. Commissioner of Internal Revenue, supra, the Court stated at p. 46 of 308 F.2d:

"There is 'no rule which permits the Commissioner to dictate what portion of a corporation's operations shall be provided for by equity financing rather than by debt.' Estate of Miller v. Commissioner of Internal Revenue, 239 F.2d 729, 734 (9th Cir. 1956), so long as the latter can be said to be debt in terms of substantial economic reality."

The Court in Byerlite Corp. v. Williams, 286 F.2d 285 (6 Cir. 1960) recognized large advances to a subsidiary as loans where there was no tax-avoidance scheme and the transaction was not a sham or masquerade.

Although there is no one controlling factor or broad rule that can be used in deciding these cases, the courts have usually recognized advances or loans to a closely held corporation as creating a true debtor-creditor relationship where there is a demonstrable business purpose in making a loan and the transaction is not a tax-avoidance scheme or a sham or masquerade. Byerlite Corp. v. Williams, 286 F.2d 285 (6 Cir. 1960); Ruspyn Corporation v. Commissioner of Internal Revenue, supra. Cf. Talbot Mills v. Commissioner of Internal Revenue, 146 F.2d 809 (1 Cir. 1944), aff'd sub nom. John Kelley Co. v. Commissioner of Internal Revenue, supra, an attempted equity conversion to debt case, where the shadow of tax evasion loomed large.

In Kraft Foods Co. v. Commissioner of Internal Revenue, supra, a divided Court held the legal and economic significance of a transaction must be respected even though a minimization of taxes results; provided, of course, the transaction is not a sham or masquerade to cover a tax-avoidance scheme.

Many lenders rely upon expected earnings for payment of their debts as liquidation of a corporation or any business venture usually is a salvage operation resulting in only a small percentage being paid to the creditor, whether the creditors be stockholders or third persons. As significantly stated in Miller's Estate v. Commissioner of Internal Revenue, supra, at 732 of 239 F.2d:

"Many borrowers rely upon expected earnings for payment of their debts. We cannot see any justification for

inferring that a promissory note is unreal and not representative of the actual arrangement merely because the maker expects to pay out of future earnings."

We think the facts of this case clearly show that a loan transaction was intended, it being in the form of a loan, was treated as a loan and in substance was a loan. This was not a tax-avoidance scheme nor a mere sham or masquerade. All of the formal details relating to a loan were complied with and the corporate books reflect the transaction as a loan. Any taxpayer under the law should be allowed to commit only so much of his resources to a given venture as he desires in the form of equity or of loans, unless the transaction is a mere subterfuge or sham set up for tax-avoidance purposes. Biritz had a legitimate reason for incorporating and the loan transaction entered into was definitely not a sham or device to escape the double taxation of corporate earnings. Biritz desired to commit only a portion of his available assets to the corporate operation in the form of equity capital and certainly should be allowed to operate as expeditiously and frugally as he desires. One-man corporations are commonly used to limit personal liability. The land transferred to the corporation was actually an inventory asset and not a capital asset in the sense that the land was used as a base of corporate operations, though this factor would not necessarily be controlling. The land was used as an inventory item to further the house building operations of the corporation. The land could have been sold at any time to pay off the corporate loan. The land was not essential to the operations of the corporation in the sense that without it the corporation could not operate. Biritz could have held the land personally, developed it personally and transferred it a lot at a time to the corporation as needed for building purposes. Only an average of two lots a year were used for building purposes.

The debt to equity ratio of 2 to 1 is patently not so inordinately high as to qualify this as a "thin capitalization" case. The note was in legally proper form to qualify the holder as a general creditor in event of dissolution and was not subordinated to other corporate debts. The interest was paid annually in cash or by a promissory note and taxes paid on this income by Biritz. The demand feature of the note is of some significance as is the lack of a mortgage for security of the note, as a third person would ordinarily require security and prefer a note with a fixed maturity date, but these indicia alone are not controlling; nor can these indicia alone characterize the transaction as a subterfuge or sham. Biritz as the sole stockholder is naturally interested in the successful operation of his corporation and if he does not desire to take the extra trouble and incur the additional expense of a mortgage, he should not be called upon to do so. The demand feature is also one of convenience and is of limited significance in this case. A reasonable and fixed rate of interest was paid and the corporate earnings were not siphoned off by this transaction.

There is actually no evidence that this was not a loan, was not intended to be a loan, or that Biritz actually intended to make a capital investment rather than a loan.

■■ We think the Tax Court has painted with too broad a brush in limiting the permissible activities of an entrepreneur in personally financing his business. Financing embraces both equity and debt transactions and we do not think the courts should enunciate a rule of law that a sole stockholder may not loan money or transfer assets to a corporation in a loan transaction. If this is to be the law, Congress should so declare it. We feel the controlling principle should be that any transaction which is intrinsically clear upon its face should be accorded its legal due unless the transaction is a mere sham or subterfuge set up solely or principally for tax-avoidance purposes.

The conclusion of the Tax Court that the note did not evidence a true loan transaction is erroneous and is reversed.