T.C. Summary Opinion 2011-118

UNITED STATES TAX COURT

B. DWIGHT OLMSTEAD AND LISA B. OLMSTEAD, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17289-10S.                    Filed October 4, 2011.

B. Dwight Olmstead and Lisa B. Olmstead, pro sese.

<u>Britton G. Wilson</u> and <u>Elizabeth H. Downs</u>, for respondent.


LARO, <u>Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code (Code) in effect when the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and

---

[1]Unless otherwise indicated, section references are to the applicable version of the Code, and Rule references are to the Tax Court Rules of Practice and Procedure.  Some dollar amounts are rounded.

this opinion shall not be treated as precedent for any other case.

Petitioners petitioned the Court to redetermine respondent's determination of a $15,904 deficiency in their 2007 Federal income tax and a $3,108 accuracy-related penalty under section 6662(a).  After concessions,[2] we decide:  (1) Whether petitioners failed to report petitioner B. Dwight Olmstead's (Mr. Olmstead) pro rata share of income from Olmstead Funeral Home, Inc. (OFHI), an S corporation in which he was a majority shareholder.  We hold they did; (2) whether petitioners failed to report $5,592 of nonemployee compensation paid to petitioner Lisa B. Olmstead (Ms. Olmstead).  We hold they did not; (3) whether petitioners are subject to self-employment tax of $836 and are entitled to a self-employment tax deduction of $418.  We hold they are; and (4) whether petitioners are liable for an accuracy-related penalty under section 6662(a) due to negligence or disregard of rules or regulations, or for a substantial understatement of tax.  We hold they are.

---

[2]Petitioners concede on brief that they received $779 in retirement income from Aurora National Life Assurance Co. (Aurora).  We also consider petitioners to have conceded that they received but failed to report $26 of interest income from Olmstead, Inc. (OI), by virtue of the fact that they did not address this issue in the petition, at trial, or on brief.  See Rule 34(b)(4); Nicklaus v. Commissioner, 117 T.C. 117, 120 n.4 (2001).

Background

Some of the facts have been stipulated and are so found. The stipulated facts and the exhibits submitted therewith are incorporated herein by this reference. Petitioners are husband and wife who resided in Arkansas when the petition was filed.

I. OFHI

Mr. Olmstead was a 15-percent shareholder of OFHI until 2004 when he purchased additional shares from his father. In 2007 Mr. Olmstead owned 54.7 percent of OFHI. The remaining 44.3 percent of that company was owned by Mr. Olmstead's mother and two brothers (collectively, minority shareholders).

After Mr. Olmstead acquired a controlling interest in OFHI, he fell into bitter disputes with the minority shareholders and his father over OFHI's management. These disputes led to the commencement of several lawsuits in the Circuit Court of Cleburne County, Arkansas (State court), for alleged fraud and misrepresentation on the part of Mr. Olmstead, his father, and the minority shareholders. One such lawsuit resulted in OFHI's being placed into receivership in March 2007. In connection with that lawsuit, the State court initially appointed Lane Keeter (Mr. Keeter), a former accountant of OFHI, as the receiver. The State court subsequently appointed Jack Raymond (Mr. Raymond) as OFHI's receiver. Mr. Raymond hired Mr. Keeter as OFHI's accountant in or around October 2007.

OFHI filed with respondent a 2007 Form 1120S, U.S. Income Tax Return for an S Corporation (2007 corporate return).[3]  The 2007 corporate return reported ordinary business income of $114,743, interest income of $13,156, net long-term capital gain of $2,250, and $892,979 of deductions.  Attached to the 2007 corporate return was a Schedule K-1, Shareholder's Share of Income, Deductions, Credits, etc., which reported Mr. Olmstead's share of current year income, deductions, credits, and other items as follows:

| Item[1] | Amount |
|---|---|
| Ordinary business income | $62,763 |
| Interest income | 7,196 |
| Net long-term capital gain | 1,231 |
| Net sec. 1231 loss | 329 |
| Sec. 179 deduction | 497 |
| Other deductions | 107 |

[1]The Schedule K-1 also reported alternative minimum tax items and items affecting Mr. Olmstead's basis.

Petitioners did not report any of the foregoing items on their 2007 joint Federal income tax return (2007 return).

II.  Tanner

During 2007 Ms. Olmstead performed services for Tanner Cos., LLC (Tanner), as a salesperson, and she was paid a commission based on a percentage of the total sales she generated for Tanner.  In 2007 Tanner issued to Ms. Olmstead Form 1099-MISC,

---

[3]The copy of the 2007 corporate return included in the record is not dated.

Miscellaneous Income, which reported that Tanner paid Ms. Olmstead $5,592 of nonemployee compensation.

III. <u>2007 Return</u>

On the 2007 return petitioners reported wages of $154,570, a business loss of $61,045, and total income of $93,525.  They also reported itemized deductions of $76,355, self-employment tax of zero, total tax due of $1,058, Federal income tax withheld of $24,016, and a $22,958 overpayment of tax.  Attached to the 2007 return were three Forms W-2, Wage and Tax Statement.  The first Form W-2 was issued to Mr. Olmstead by OFHI and reported, among other things, wages of $130,187.  The second Form W-2 was issued to Mr. Olmstead by Cleburne County and reported, among other things, wages of $5,000.  The third Form W-2 was issued to Ms. Olmstead by Herber Springs School District and reported, among other things, wages of $13,790.  Also attached to the 2007 return were two Schedules C, Profit or Loss From Business.  The first Schedule C for Olmstead Investments, Inc., reported zero gross receipts or sales, zero expenses, and a net loss of $13,002.  The second Schedule C for OFHI reported zero gross receipts or sales, total expenses of $48,043, and a net loss of $48,043.

IV. <u>Notice of Deficiency, Petition, and Trial</u>

By notice of deficiency dated June 21, 2010 (notice), respondent determined that petitioners had failed to report the following income from OFHI:  $62,763 of ordinary business income,

$7,196 of interest income, and $1,231 of net long-term capital gain. Respondent also determined that petitioners had failed to report $5,592 of nonemployee compensation from Tanner, $26 of interest income from OI, and $779 of retirement income from Aurora. Finally, respondent determined computational adjustments to the 2007 return. Petitioners petitioned the Court in response to the notice, and a trial was held in which Mr. Olmstead was the only witness to testify.

Discussion

## I. Burden of Proof

As a general rule, the Commissioner's determinations in a notice of deficiency are presumed correct, and taxpayers must prove error in those determinations to prevail. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1993). Section 7491(a) provides an exception to the general presumption of correctness in that the burden of proof as to factual issues may shift to the Commissioner in limited circumstances. For the burden of proof to shift to the Commissioner, section 7491 requires taxpayers to prove that they have maintained adequate records, satisfied certain substantiation requirements, and cooperated fully with the Commissioner. See sec. 7491(a)(2)(A) and (B). Petitioners have not alleged that section 7491(a) applies, nor have they established their compliance with the recordkeeping requirements

of section 7491(a)(2)(A) and (B).  Accordingly, petitioners bear the burden of proof.

II.  Distributable Income From OFHI

On the basis of the Schedule K-1, respondent determined that petitioners failed to report Mr. Olmstead's pro rata share of income from OFHI.  Petitioners counter that Mr. Keeter fraudulently issued the Schedule K-1 and that any distributions from OFHI were loan repayments to Mr. Olmstead to reimburse him for certain business expenses which he paid for OFHI.  We agree with respondent.[4]

An S corporation such as OFHI generally does not incur an entity-level tax.  See sec. 1363(a).  Rather, items of income, loss, deduction, and credit attributable to the corporation flow through to its shareholders and must be reported by each shareholder pro rata on his or her individual income tax return. Sec. 1366(a); see also sec. 1.1366-4(a), Income Tax Regs.  The 2007 corporate return reported $114,743 of ordinary business income, $13,156 of interest income, and $2,250 of net long-term capital gain.  We find the Schedule K-1 to accurately reflect Mr. Olmstead's 54.7-percent share of income from OFHI, including $62,763 of ordinary business income, $7,196 of interest income, and $1,231 of net long-term capital gain.

---

[4]Notwithstanding secs. 6037(c) and 6213(b)(1), we have jurisdiction to redetermine the entire deficiency, including the adjustments arising from petitioners' inconsistent reporting. See Winter v. Commissioner, 135 T.C. 238, 242 (2010).

Petitioners' arguments that they are not required to report Mr. Olmstead's distributable share of income from OFHI are not persuasive.  First, petitioners contend that Mr. Olmstead's distributable share of income from OFHI should be reduced because he lent $131,000 to OFHI.  We disagree.  Whether an advance made by a shareholder to a corporation qualifies as a bona fide loan that creates a debtor-creditor relationship is a question of fact to be decided in the light of the surrounding facts and circumstances.  See J.S. Biritz Constr. Co. v. Commissioner, 387 F.2d 451, 453 (8th Cir. 1967), revg. T.C. Memo. 1966-227.  Essential to the creation of a debtor-creditor relationship are a good-faith intent on the part of the debtor to make repayment and on the part of the creditor to enforce repayment.  See Fisher v. Commissioner, 54 T.C. 905, 909-910 (1970).  Other factors we have considered as indicative of a debtor-creditor relationship include:  (1) A written loan agreement; (2) provisions for security, interest, and a fixed repayment schedule; and (3) records of the parties that reflect the transaction as a loan. See Calloway v. Commissioner, 135 T.C. 26, 37 (2010); McFadden v. Commissioner, T.C. Memo. 2002-166; see also United States v. Basin Elec. Power Coop., 248 F.3d 781, 804 (8th Cir. 2001).

Petitioners did not produce a note evidencing OHFI's indebtedness to Mr. Olmstead, a repayment schedule, proof of adequately stated interest, proof of repayment, or any other

evidence that establishes that Mr. Olsmtead and OFHI were in a debtor-creditor relationship.[5]  We are especially unpersuaded that Mr. Olmstead lent $131,000 to OFHI because of his inconsistent statements at trial.  For example, Mr. Olmstead stated in his opening statement that he lent more than $115,000 to OFHI, but during cross-examination he claimed that the loan was about $100,000.  Yet on brief, petitioners assert that Mr. Olmstead lent OFHI more than $131,000.  We decline to accept such self-serving and inconsistent statements without corroborating evidence.  See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).  We thus conclude that petitioners have failed to carry their burden of proving that Mr. Olmstead lent $131,000 to OFHI.

Petitioners next assert that Mr. Keeter inaccurately and fraudulently prepared the 2007 corporate return.  Specifically, petitioners contend that Mr. Keeter, Mr. Raymond, OFHI's attorney, and the minority shareholders conspired to defraud Mr. Olmstead of his interest in OFHI.  Petitioners further claim that Mr. Keeter failed to deduct business expenses on the 2007 corporate return which Mr. Olmstead had paid on behalf of OFHI and that such expenses, if deducted, would reduce Mr. Olmstead's distributable share of income from OFHI.

---

[5]Mr. Olmstead offered into evidence a summary of the loans purportedly made to OFHI.  We declined to receive that summary into evidence because Mr. Olmstead did not produce the underlying documents on which that summary was based.  See Fed. R. Evid. 1006.

Petitioners seek to carry their burden primarily by relying on Mr. Olmstead's testimony and documents which he prepared describing the alleged conspiracy.  They did not corroborate their allegations of fraud by calling witnesses such as Mr. Keeter, Mr. Raymond, OFHI's attorney, or any of the minority shareholders, though it was their right to do so.[6]  Nor did they offer any documents filed with or received from the State court. We give little weight to self-serving testimony of interested parties, especially where there is no corroborating evidence to support these claims.  See Day v. Commissioner, 975 F.2d 534, 538 (8th Cir. 1992), affg. in part and revg. in part T.C. Memo. 1991-140.  Accordingly, we find that petitioners failed to carry their burden of proving that the Schedule K-1 was fraudulently issued.

We also decline to accept petitioners' assertion that OFHI's accountant failed to report business deductions of more than $131,000 on the 2007 corporate return.  Petitioners did not adduce any evidence establishing that the payments Mr. Olmstead allegedly made for OFHI were ordinary and necessary business expenses of OFHI.  See sec. 162.  They did not establish that

---

[6]Petitioners submitted into evidence an email exchange between Mr. Olmstead's attorney and Mr. Raymond regarding a loan secured by OFHI's property.  We are not persuaded by petitioners' contention that this email exchange evinced the intent of Mr. Keeter or Mr. Raymond to defraud Mr. Olmstead of his interest in OFHI.  We find that the email exchange, if anything, reflects that Mr. Raymond was forthcoming with unfavorable information concerning the minority shareholders and was willing to cooperate with Mr. Olmstead to ascertain the financial situation of OFHI.

-11-

such expenses were not already included in OFHI's reporting of $892,979 of deductions on the 2007 corporate return. Nor do we accept petitioners' contention that they should be permitted to report OFHI's business expense deductions on the 2007 return. It is well established that a corporation and its shareholders are separate entities for Federal tax purposes. See <u>Moline Props., Inc. v. Commissioner</u>, 319 U.S. 436, 438-439 (1943); <u>Crook v. Commissioner</u>, 80 T.C. 27, 33 (1983) (including S corporations under the <u>Moline</u> doctrine), affd. without published opinion 747 F.2d 1463 (5th Cir. 1984). It is equally well settled that a shareholder who pays a corporation's expenses is not entitled to deduct the expenses on his or her personal income tax return because such expenditures are regarded as loans or capital contributions. See <u>Deputy v. du Pont</u>, 308 U.S. 488, 494-495 (1940); <u>Betson v. Commissioner</u>, 802 F.2d 365, 368 (9th Cir. 1986), affg. in part and revg. in part T.C. Memo. 1984-264. We therefore conclude that petitioners may not deduct OFHI's alleged business expenses on the 2007 return.[7]

As petitioners have failed to establish any nontaxable source of Mr. Olmstead's distributable share of OFHI income, we

---

[7]Respondent did not assert and we do not decide whether petitioners are precluded from deducting losses of $13,002 and $48,043 from their activities with Olmstead Investments, Inc., and OFHI, respectively. See, e.g., <u>Betson v. Commissioner</u>, 802 F.2d 365, 368 (9th Cir. 1986), affg in part and revg. in part T.C. Memo. 1984-264; <u>Leuthold v. Commissioner</u>, T.C. Memo. 1987-610.

must sustain respondent's determination.  We thus hold that petitioners failed to report ordinary business income of $62,763, interest income of $7,196, and net long-term capital gain of $1,231.  We also hold that petitioners are entitled to a net section 1231 loss of $329, a section 179 deduction of $497, and other deductions of $107, as reported on the Schedule K-1.

III. Nonemployee Compensation

Respondent also determined that petitioners failed to report on the 2007 return $5,592 of nonemployee compensation that Tanner paid to Ms. Olmstead.  Petitioners concede on brief that Ms. Olmstead received $5,592 of nonemployee compensation from Tanner but contend that they reported the amount as wages on the 2007 return.  We agree with petitioners.  The Forms W-2 attached to the 2007 return show that petitioners received wage income of $148,977, but petitioners reported that they received wages of $154,570.  We observe that petitioners overreported their wages by $5,593, which correlates with the amount of nonemployee compensation Tanner paid Ms. Olmstead.[8]  We credit petitioners' claim that they reported the nonemployee compensation as wages on the 2007 return and hold that they need not report such income as taxable twice.

---

[8]We attribute the $1 difference to rounding.

IV. Self-Employment Tax

Respondent determined that the $5,592 of nonemployee compensation Ms. Olmstead received from Tanner is subject to self-employment tax. We agree. Section 1401 imposes a tax on an individual's self-employment income. See sec. 1401(a) and (b). Self-employment income includes any gross income derived by an individual from carrying on a trade or business, less the allowable deductions attributable to such trade or business. See sec. 1402(a) and (b); see also sec. 1.1402(a)-1, Income Tax Regs. Petitioners do not dispute that the sales activities Ms. Olmstead carried on for Tanner were part of her trade or business, and they did not claim or prove any deductions attributable to Ms. Olmstead's sales activities. We therefore conclude that the $5,592 of nonemployee income Tanner paid Ms. Olmstead was self-employment income. Accordingly, we hold that petitioners are liable for self-employment tax of $836 on $5,592 of nonemployee compensation, see sec. 1401(a) and (b), and that they are entitled to a deduction of $418 which is equal to one-half of the self-employment tax paid, see sec. 164(f).

V. Accuracy-Related Penalty

Respondent determined that petitioners are liable for a 20-percent accuracy-related penalty under section 6662(a) and (b)(1) and (2) for a substantial understatement of income tax, or alternatively, because of negligence or disregard of rules or

regulations.  Under section 7491(c), respondent bears the burden of producing evidence that it is appropriate to impose an accuracy-related penalty.  See Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  An understatement of income tax is considered substantial if the understatement exceeds the greater of 10 percent of the tax required to be shown on the return, or $5,000.  See sec. 6662(d)(1)(A).  As petitioners' understatement of income tax is more than 10 percent of the tax required and $5,000, we find that respondent has satisfied his burden of production.

Since respondent has met his burden of production, the burden of persuasion shifts to petitioners to prove that an accuracy-related penalty does not apply because they:  (1) Had reasonable cause; and (2) acted in good faith.  See sec. 6664(c)(1); Higbee v. Commissioner, supra at 446.  Whether a taxpayer acted with reasonable cause and in good faith with regard to an underpayment related to an item reflected on the return of a passthrough entity is determined "on the basis of all pertinent facts and circumstances, including the taxpayer's own actions, as well as the actions of the pass-through entity".  Sec. 1.6664-4(e), Income Tax Regs.  In general, the most important factor to be considered when determining the existence of reasonable cause and good faith is the extent to which the taxpayer endeavored to assess his or her proper tax liability.  Sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioners have not specifically addressed in their petition, at trial, or on brief whether they acted with reasonable cause.  We understand from Mr. Olmstead's testimony that petitioners believe they acted with reasonable cause because Mr. Olmstead allegedly did not receive the Schedule K-1.  Mere nonreceipt of a Schedule K-1 does not necessarily constitute reasonable cause sufficient to excuse a taxpayer from reporting his or her distributable income from an S corporation where a taxpayer does not pursue other means to assess his or her proper tax liability.  See Van Ryswyk v. Commissioner, T.C. Memo. 2009-189; Deas v. Commissioner, T.C. Memo. 2000-204.

Petitioners do not assert that they inquired from OFHI as to whether Mr. Olmstead would be issued a Schedule K-1 or that they requested an extension of time to file the 2007 return until they received the Schedule K-1.  Instead, Mr. Olmstead assumed on the basis of his mistaken belief that there was no distributable income from OFHI in 2007 that he would not receive a Schedule K-1.  Although Mr. Olmstead testified that petitioners requested access to OFHI's financial records, we are not persuaded that such requests, assuming they occurred, were sufficient to constitute reasonable cause.  Petitioners offered no corroborating evidence such as letters requesting access to OFHI's records.  We infer from this lack of evidence that there was none or that it would be unfavorable to petitioners' claim.

See <u>Wichita Terminal Elevator Co. v. Commissioner</u>, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947).  We also observe that Mr. Olmstead, as OFHI's majority shareholder, could have accessed OFHI's financial records but did not.  See Ark. Code. Ann. sec. 4-26-715(b) (2001) (giving shareholders the right to examine the books and records of a corporation they own upon written demand).

On balance, we are unable to conclude that petitioners attempted to assess their proper tax liability.  Accordingly, we hold that petitioners are liable for the accuracy-related penalty under section 6662(a) on that portion of the deficiency attributable to:  (1) Mr. Olmstead's pro rata share of income from OFHI; (2) self-employment tax on the nonemployee compensation from Tanner; (3) $26 of interest income from OI; and (4) $779 of retirement income from Aurora.

We have considered all arguments made by the parties, and to the extent not discussed above, we conclude that those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.