NORVILLE R. PERVIER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Pervier v. Commissioner
Docket No. 4676-87
United States Tax Court
T.C. Memo 1989-344; 1989 Tax Ct. Memo LEXIS 343; 57 T.C.M. (CCH) 975; T.C.M. (RIA) 89344; July 19, 1989
Kenneth E. Keate, for the petitioner. Gordon L. Gidlund, for the respondent. WILLIAMS
MEMORANDUM FINDINGS OF FACT AND OPINION WILLIAMS, Judge: The Commissioner determined deficiencies in petitioner's Federal income tax as follows: Additions to Tax
Section
Section
Year
Deficiency
6653(a)(1) [1]
6653(a)(2)
1980
$  6,955
1981
19,603
$ 980 *
1982
31,928
At trial petitioner conceded *344 the correctness of respondent's disallowance of deductions for travel and entertainment expenses and net operating loss carryforwards for the years in issue. On brief the parties resolved the issue of whether petitioner received additional taxable income of $ 8,019 in 1981 by agreeing that, of that amount, $ 3,784.20 is taxable and $ 4,234.80 is not taxable. After these concessions, the issues we must decide are (1) whether the fair market value of goods and services received by petitioner's subchapter S corporation constituted taxable income to petitioner during 1980, 1981 and 1982, and (2) whether petitioner is liable for additions to tax pursuant to sections 6653(a)(1) and 6653(a)(2) for his 1981 taxable year. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioner resided in St. Paul, Minnesota at the time the petition was filed in this case. Petitioner was president, sole shareholder and sole employee of Minneapolis/St. Paul Business Exchange ("Exchange"). During the years in issue Exchange's taxable year ended on January 31. Petitioner's taxable year ended December 31. Exchange used the cash method of accounting to report its income. *345 From January 31, 1979, to April 1980, Exchange was a franchisee of a national barter exchange group, Mutual Credit, and did business as Mutual Credit of Minnesota. In April 1980, Exchange severed its relationship with Mutual Credit and started doing business on its own as Midwest Barter Group. Exchange, a subchapter S corporation, acted as a clearing house for the barter of goods and services between members and provided its membership with a medium of exchange ("trade dollars"). According to Exchange's rules, the value of one trade dollar equaled one U.S. dollar. Exchange publicized property and services available for barter and held auctions to facilitate the barter of goods and services among its membership. Exchange itself possessed several accounts through which it carried out barter transactions. Exchange would record each barter of goods (1) by crediting the seller's account with the agreed upon price in trade dollars less a commission of five percent in trade dollars ("commission fees"), and (2) by debiting the buyer's account with the agreed upon price in trade dollars. The buyer would also pay a fee in cash. Exchange would credit its own account with the commission *346 fees. For the taxable year ended January 31, 1981, Exchange reported income in the amount of $ 33,794.03 from the receipt of commission fees charged to members of Exchange. For the year ended January 31, 1982, Exchange reported income in the amount of $ 40,577.79 from the receipt of these commission fees. This income was reflected on petitioner's returns for the years in issue. There is no evidence in the record as to the balance of trade dollars in Exchange's account for any year in issue. The books and records of Exchange show that it received goods and services from its members valued at $ 37,504, $ 37,401 and $ 47,460 in 1980, 1981, and 1982, respectively. Exchange gave the trade dollars it had acquired from commission fees in exchange for the goods and services it received in 1981 and 1982. Moreover, Exchange issued additional trade dollars for the value of goods and services it received in excess of the trade dollars it had in its account for those years ($ 3,606.97 in 1981, $ 6,882.21 in 1982). At all relevant times, the combined total of trade dollars outstanding in the accounts of Exchange's members exceeded the total negative balances of trade dollars in the accounts *347 of other members. Petitioner testified that through the continued operation of the barter group, this excess could be eliminated through the commission fees Exchange collected in future years on each transaction. Exchange deducted as business expenses the fair market value of trade dollars it used to purchase the goods and services received in the years in issue but did not report the fair market value of these goods and services on its U.S. Small Business Corporation income tax returns. Respondent allowed the deduction of the barter credits as business expenses but determined that the fair market value of goods and services received by Exchange from its members must be included in petitioner's income for 1980, 1981, and 1982. OPINION Preliminarily, petitioner argues that the method of accounting used by Exchange clearly reflects income and, therefore, respondent may not in his discretion change that accounting method. Section 446. We decline to address petitioner's arguments concerning the method of accounting used by Exchange because respondent has not challenged that method of accounting. Rather, respondent is disputing petitioner's failure to include in his taxable income *348 the value of goods and services received by Exchange. The issue we must decide is whether the fair market value of goods and services received by Exchange must be included in petitioner's taxable income for the years in issue. Respondent's determination of deficiency is presumptively correct. Petitioner has the burden of proving respondent's determination to be erroneous. Rule 142(a), Tax Court Rules of Practice and Procedure.
Gross income includes all income from whatever source derived whether realized in the form of money, property or services. Section 1.61-2(d)(1), Income Tax Regs. The value of trade dollars received by a taxpayer is includable in his gross income in the taxable year in which the trade dollars are credited to the taxpayer's account. Similarly, the value of goods and services received without payment, except for gifts, is includable in gross income when received. Petitioner does not argue that the goods and services were gifts. Exchange included *349 in its income (and petitioner in his income as the shareholder of Exchange, a Subchapter S corporation), trade dollars received by Exchange as commission fees from its members. Petitioner argues that Exchange used these trade dollars, already included in income, in payment of the goods and services Exchange received. In 1980, 1981, and 1982 Exchange received goods and services in the amount of $ 37,504, $ 37,401, and $ 47,460, respectively, the receipt of which was not reported as income on Exchange's or petitioner's returns for the years in issue. In petitioner's view, at the most, only the excess of the value of goods and services received by Exchange over the trade dollars included in income can be includable in income for the years in issue. Petitioner reported income from the receipt of trade dollars in the amount of $ 33,794.03 in 1981 while the books and records of Exchange show that it received goods and services in the amount of $ 37,401 in 1981. Similarly, in 1982 petitioner reported income of $ 40,577.79 from the receipt of trade dollars although Exchange received goods and services valued at $ 47,460. Exchange received goods and services in the amount of $ 37,504 *350 in 1980. Petitioner concedes that no trade dollars in Exchange's account in 1980 were included in Exchange's income for that year. We accept petitioner's contention that Exchange received goods and services in exchange for trade dollars already included in its income. To that extent, Exchange's receipt of goods and services is not taxable. While the evidence does not present as complete a picture as it should (due in large part to sanctions imposed for petitioner's recalcitrant attitude during discovery), we believe his testimony and evidence that payments were made out of Exchange's own trade accounts with dollars reported as commission income. Consequently, we hold that petitioner is not taxable on $ 33,794.03 and $ 40,577.79 of the goods and services received by Exchange in 1981 and 1982, respectively, that were paid for with trade dollars already taxed. However, the $ 37,504 of goods and services received in 1980 by Exchange is income to Exchange and taxable to petitioner in 1980 unless we view those trade dollars as evidence of purchase money debt. Petitioner argues that the value of the goods and services received by Exchange that were not paid for out of trade dollars *351 included in income as commissions is not income to Exchange because Exchange issued debt for the value received. Petitioner contends that these trade dollars were the equivalent of notes evidencing Exchange's obligation to its members for the currency equivalent of the amount of trade dollars issued. See In re Diversified Brokers Co., 487 F.2d 355 (8th Cir. 1973). Petitioner testified that Exchange's obligation would be satisfied out of the commission fees collected by Exchange in future years. Whether a debtor-creditor relationship exists is a question to be determined on the basis of all the facts and circumstances. J. S. Biritz Construction Co. v. Commissioner, 387 F.2d 451, 453 (8th Cir. 1967), revg. a Memorandum Opinion of this Court; Haag v. Commissioner, 88 T.C. 604 (1987), affd. without published opinion 855 F.2d 855 (8th Cir. 1988). It is essential for the existence of a debtor-creditor relationship that there be a good-faith intent on the part of the debtor to make repayment and a good-faith intent on the part *352 of the creditor to enforce repayment. Fischer v. Commissioner, 54 T.C. 905, 910 (1970). If the Exchange's issuance of trade dollars for goods and services was true debt, Exchange had to have, at the time of the issuance of trade dollars, an unconditional obligation to repay the value of the goods and services it received, and Exchange's members had to have an enforceable right and intention to secure repayment. Haag v. Commissioner, supra at 616. Although petitioner's testimony is credible and we believe that the value of trade dollars might be repaid out of commission fees collected by Exchange, Exchange had not in fact collected those commissions, and petitioner did not prove that Exchange had the funds available to pay off the excess trade dollars. There is no evidence in this record that the members of Exchange could or would enforce repayment of the value of the trade dollars issued to them. Further, there is no evidence that a member of Exchange could redeem trade dollars if the Exchange were to terminate business or if the member withdrew from Exchange. On these salient points, petitioner's case is materially different from In re *353 Diversified Brokers Co., supra.Consequently, we hold that the trade dollars issued by Exchange in excess of commissions earned and paid were not loans. Petitioner must include in his income $ 37,504, $ 3,606.97 and $ 6,882.21 in his 1980, 1981 and 1982 income, respectively. Petitioner contends further that some of the goods and services received by Exchange in 1980 and 1981 were worthless and, therefore, should not be included in his income. Petitioner offered no documentary or other credible support for his contention that some goods and services Exchange received were worthless. Indeed, the trade dollars issued in payment for these goods and services is most persuasive in that Exchange and petitioner thought that the goods and services were not worthless. Petitioner has not proven that any goods and services received by Exchange were worthless. Petitioner, for the first time on brief, asks to compute his income using income averaging "if it is applicable to him." Petitioner's claim of income averaging should have been raised at, or preferably prior to, trial. There is insufficient evidence in the record to permit an income averaging computation, so it cannot be determined *354 "if it is applicable to him." Cloes v. Commissioner, 79 T.C. 933, 935 (1982). We, therefore, hold that petitioner is not entitled to income averaging for the years in issue. The final issue we must address is whether petitioner is liable for an addition to tax for negligence pursuant to section 6653(a) in 1981 because of his failure to include $ 3,784.20 in his income. Petitioner argues that he relied upon the expertise of his accountant and exercised ordinary business care and prudence in preparing his 1981 return. He maintains that this income was inadvertently omitted from his tax return by his accountant. Petitioner is a businessman, and his testimony at trial shows that he is a meticulous record keeper. Petitioner is responsible for the accuracy of his return, and the amount of the omission is a material item on petitioner's 1981 return. Petitioner reported $ 8,938 in wages from the Exchange in 1981 and no other income. Consequently, we hold that petitioner is responsible for the negligent omission of income from his return. Petitioner is liable for an addition to tax for negligence for 1981 pursuant to section 6653(a)(1) and pursuant to section 6653(a)(2) *355 in respect of the underpayment of tax attributable to the omission of $ 3,784.20 from income. Because of concessions, Decision will be entered pursuant to Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954 as in effect for the years in issue, unless otherwise indicated. * 50% of the interest due on $ 4,354 in 1981.↩