BARTER SYSTEMS, INC. OF WICHITA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Barter Systems, Inc. v. Commissioner
Docket No. 4848-87
United States Tax Court
T.C. Memo 1990-125; 1990 Tax Ct. Memo LEXIS 125; 59 T.C.M. (CCH) 72; T.C.M. (RIA) 90125; March 12, 1990
*125 P was a barter exchange. P issued trade units to acquire property from members. Trade units were credited to members at the ratio of one trade unit per dollar of fair market value of property acquired by P. P also sold property to members for trade units. The price (in trade units) charged to the buyer was equal to the price (in trade units) paid to the member from whom the property was acquired. The account of a member buying property was reduced by the number of trade units equal to the property's price plus a 10-percent commission payable to petitioner in trade units. Goods and services were sometimes exchanged directly between members. P received a 10-percent commission on those exchanges. On occasion, P accepted cash in exchange for the issuance of trade units to a member. P reported in income an amount of dollars equal to the number of trade units received for commissions for the years at issue. Held, P is taxable on (1) membership fees and dues, (2) commissions, (3) payments received in connection with the sale of trade units to a member, and (4) the fair market value of property received from members in exchange for the issuance of trade units (reduced *126 by the fair market value of property sold to members in exchange for the cancellation of trade units). Held further, P was not negligent in failing to report income from the issuance of trade units for property since P's reporting position was made in good faith. John Leeper and Towner Leeper, for the petitioner. C. Joseph Craven, for the respondent. COLVIN
*197 MEMORANDUM FINDINGS OF FACT AND OPINION COLVIN, Judge: Petitioner was a barter exchange operated as a vehicle for the exchange of goods and services among its members. The primary issues for decision are (1) whether petitioner realized income on the receipt of property from members in exchange for the issuance of trade units, and (2) whether petitioner realized income on the sale of property to exchange members for trade units. As discussed *127 below, we hold that amounts received by petitioner as membership fees, dues, and commissions are includable in income. We also hold that cash or other payments received by petitioner on sales of trade units are includable in income. Further, as discussed below, we hold that petitioner realized income when it received property from members in exchange for trade units. We further hold that petitioner may reduce that income by the amount of property purchased by members in exchange for the cancellation of trade units. Responsdent determined deficiencies and additions to tax as follows: Addition to Tax
Year Ended
Deficiency
Sec. 6653(a) [1]
2/29/80
$ 39,986.38
$ 1,849.32
2/28/81
$ 11,722.62
$   586.13
FINDINGS OF FACT The facts have been fully stipulated pursuant to Rule 122, and are so found. During the years at issue, petitioner was a Kansas corporation with its principal place of business in Wichita, Kansas. Petitioner's corporate charter was *128 forfeited on September 15, 1984, due to its failure to file and pay the annual franchise tax. At the time of filing its petition in this case, petitioner was continued as a "body corporate" under Kansas law for the 3-year period following its dissolution pursuant to Kans. Stat. Ann. sec. 17-6807 (1988). [2] At *198 various times, petitioner also did business under the name of American Trade Exchange. *129 1. Petitioner's Barter Transactions
During the years at issue in this case, petitioner operated as a vehicle for the exchange of goods and services among its members as well as for itself. Some barter transactions were conducted directly between petitioner's members. Others were accomplished by first transferring property from one member to petitioner, followed by later purchase of the property by another member. For both types of transactions, petitioner received a commission payable in trade units. 2. Trade Units
Petitioner used trade units (hereinafter "T.U.'s") as the medium of exchange. T.U.'s were recorded on petitioner's books and records to reflect the fair market value of goods and services transferred among members and petitioner. No scrip or other document was issued for T.U.'s. T.U. values were assigned at a rate of one T.U. per dollar. 3. Barter Transactions Between Members
Members could acquire goods and services directly from other members in exchange for T.U.'s. Such member-to-member exchanges resulted in the transfer of T.U.'s from a buyer-member's account to a seller-member's account, plus a 10-percent commission payable in *130 T.U.'s by the buyer to petitioner. These transactions were recorded on petitioner's books and records as follows: (a) Petitioner credited the seller-member's T.U. account by the number of T.U.'s equal to the prevailing price of, or charge for, the goods and services sold. (b) Simultaneously, petitioner debited the buyer-member's T.U. account by an amount equal to: (1) The number of T.U.'s credited to the seller-member, plus (2) An additional 10 percent of the T.U.'s credited to the seller-member. The 10-percent amount represented petitioner's commission. It was credited to petitioner's own T.U. account and reported in income on petitioner's tax returns for the years at issue. 4. Barter Transactions Through the Exchange
Some transactions were conducted through the exchange, rather than member to member. When its members transferred property to petitioner, petitioner credited their accounts with T.U.'s. T.U.'s were credited to members at the ratio of one T.U. per dollar of fair market value of an item transferred to petitioner. Once credited, T.U.'s were used to buy goods and services from other members. Petitioner reported no income on these exchange transactions. *131 For example, assume member A transferred office supplies worth $ 100 to petitioner. Petitioner credited A's account with 100 T.U.'s, which member A could use to buy property or services through the exchange. Assume member B then decided to buy the office supplies from petitioner. B's account would be reduced by 110 T.U.'s (100 T.U.'s for the office supplies and 10 T.U.'s for petitioner's commission). Petitioner treated the reduction in T.U.'s for the commission as the equivalent of $ 10 and reported it as income. No further adjustment was made to the T.U. account of the member from whom petitioner originally acquired property. Petitioner could use, exchange, sell, or otherwise dispose of property transferred to it in exchange for T.U.'s. Petitioner's issuance of T.U.'s to members resulted in the creation of a duty to deliver to the holder of T.U.'s any products or services which petitioner had available. If, for example, petitioner instead used the office supplies transferred to it by A, petitioner debited either its expense account or capital expenditure account. Petitioner reported the number of T.U.'s debited to its expense account as a deduction on its tax returns *132 for the years at issue. The T.U.'s debited to petitioner's capital expenditures account were partially deducted on petitioner's returns for the years at issue as depreciation or amortization. Petitioner still had an obligation to make property or services available to A. A member may want T.U.'s but lack property or services to exchange for them. On rare occasion, petitioner accepted cash in exchange for crediting a member's account with an equal number of T.U.'s. During the taxable year ended February 29, 1980, petitioner credited members with 1,463 T.U.'s in exchange for $ 1,463 cash. Petitioner did not report that amount as income on its tax return for that year. Member with T.U.'s who decided to cease membership in the exchange were required to give 30 days' written notice to petitioner. These members agreed to spend as many of their accumulated T.U.'s as possible for goods and services *199 offered by other members of petitioner within 180 days from the date of the termination of membership. Petitioner was not obligated to redeem T.U.'s from members. T.U.'s were not considered as legal tender or security by either petitioner or its members and were not generally convertible *133 to cash. In rare instances, however, petitioner redeemed T.U.'s for cash at rates substantially less than one dollar per T.U. A person became a member of the barter club by paying an initial membership fee of $ 50 and annual dues of $ 300 and by signing a membership agreement. Members were to be sent at least $ 350 of business, and could spend $ 350 within the barter exchange, or petitioner would, at the end of one year, extend the agreement another year, or if refused by the member, refund $ 350 in cash. All money received by petitioner as membership fees was reported as income by petitioner for the years at issue here. Petitioner maintained a warehouse or showroom where it placed goods received from members in exchange for T.U.'s. Petitioner did not maintain a physical inventory which described or recorded the property acquired from members or the value of such items. 5. Accounting for Petitioner's Barter Transactions
For the tax year ended February 29, 1980, the total number of T.U.'s credited to members when property was transferred to petitioner, plus all T.U.'s credited to seller-members on transfers of property between members, represents the fair market *134 value of all property transferred directly from members to petitioner, and from seller-members to buyer-members (hereinafter referred to as "seller credits"). For the taxable year ending February 29, 1980, the aggregate number of T.U.'s debited from members' accounts represents the fair market value of all property acquired by buyer-members from petitioner, and from seller-members (hereinafter referred to as "buyer debits"). The difference between seller credits and buyer debits [3] for the year ending February 29, 1980, equals the total fair market value of property acquired by petitioner in that year from members that: (1) was not transferred during that year from petitioner to anybody, and (2) was not consumed or taken for use as a capital asset by petitioner. For the taxable year ended February 29, 1980, total seller credits, increased by the 1,463 T.U.'s created and credited on petitioner's receipt of $ 1,463 cash, less *135 buyer debits equals 139,294 and represents the value of everything acquired by petitioner from its members less property purchased from petitioner by members with T.U.'s. Petitioner did not include the $ 139,294 value in its income, but instead listed it as a liability (i.e., a mortgage, note or bond payable in less than 1 year) on Schedule L of its tax return for the year ended February 29, 1980. Total seller credits entered on petitioner's books for the taxable year ended February 28, 1981, less total buyer debits entered on petitioner's books during that year equals 66,988. This amount represents the value of everything acquired by petitioner from members less property acquired from petitioner by members with T.U.'s. Petitioner did not include the $ 66,988 value in its income, but instead included it as a liability on Schedule L on its return for the year ended February 28, 1981. The $ 66,988 and the $ 139,294 from 1980 totaled $ 206,282. That amount was entered on Schedule L of petitioner's return for the year ended February 28, 1981, as a mortgage, note, or bond payable in less than one year. Petitioner filed its income tax return for its taxable year ending February 29, 1980, on *136 August 19, 1980, in Austin, Texas. Petitioner filed its income tax return for the tax year ending February 28, 1981, on November 20, 1981, in Austin, Texas. The statutory notice of deficiency setting forth respondent's determination of petitioner's income tax liabilities for the taxable years ended February 29, 1980, and February 28, 1981, was timely mailed to petitioner by certified mail on February 5, 1987. OPINION 1. Membership Dues, Fees, Commissions, and Other Transactions With Trade Units. The includability in income of membership fees, dues, and commissions is not in dispute. The parties agree, and we hold, that amounts received by petitioner as membership fees, dues, and commissions are includable in income. Sec. 61. If petitioner sells trade units to a member for cash, petitioner realizes income in the amount paid by the member for the trade units. 2. Exchange of Trading Units for Property and Services. The next issue is whether the fair market value of goods and services received by petitioner from members in exchange for the issuance of trade units is includable in petitioner's taxable income. *200 a. Prior Barter Cases and Revenue Rulings *137 . We have decided several cases involving barter exchanges and their members. For example, we have previously held that the value of trade units received by a barter exchange as commissions on barter transactions was $ 1 each, Baker v. Commissioner, 88 T.C. 1282 (1987); and that a barter exchange neither acquired a basis, nor had an ownership interest, in members' trade units so as to be entitled to deduct as bad debts uncollectible negative balances in active members' accounts, or deduct as ordinary and necessary business expenses the negative balances of inactive members' accounts, Exchange Enterprises of Salt Lake, Inc. v. Commissioner, T.C. Memo. 1987-414. In Wright v. Commissioner, T.C. Memo. 1984-287, we held that the sole proprietor of a barter exchange had to include in income the entire amount of goods and services received from members. The Commissioner has issued several revenue rulings concerning the tax treatment of barter exchange members. In Rev. Rul. 79-24, 1979-1 C.B. 60, members of a barter club exchanged *138 legal services for housepainting services. The I.R.S. took the position that the fair market value of the services received by the lawyer and the housepainter was includable in income. In Rev. Rul. 80-52, 1980-1 C.B. 100, a barter club credited or debited its members' accounts with trade units for goods or services provided or received. The I.R.S. took the position that the value of the trade units was includable in members' incomes for the taxable year in which the units were credited to their accounts. In Rev. Rul. 83-163, 1983-2 C.B. 26, members of a barter club agreed to provide specific services at the request of another member in exchange for the right to receive future services from other club members. The I.R.S. took the position that the fair market value of services received by members is includable as compensation income for the taxable year in which received. b. Petitioner's Acquisition of Property in Exchange for the Issuance of Trade Units. Respondent argues that the transfer of property to petitioner from members, in exchange for the issuance of trade units, results in taxable income to petitioners equal to the fair market value *139 of the property transferred. Respondent contends that petitioner used T.U.'s to acquire from members property which petitioner was at liberty to deal with in any manner it chose. There was no agreement or obligation affecting petitioner's freedom to use, consume, exchange, transfer, or sell such property. When property was transferred, no notes were signed, no contracts or agreements in the nature of a consignment were made, and no duty was imposed on petitioner to redeem T.U.'s or to care for or return such property to the transferor. Respondent maintains that petitioner's freedom to deal with property was affected in only one way: pursuant to the terms of the membership agreement, petitioner was "obligated only to provide products or services that it has available." Respondent argues that this was merely an illusory promise because, if petitioner consumed or sold all of the property, it would have no duty to provide any product to a member. In our view, the correctness of respondent's analysis depends on whether trade units are debt instruments. Whether a debtor-creditor relationship *140 exists is a question to be determined on the basis of all the facts and circumstances. J. S. Biritz Construction Co. v. Commissioner, 387 F.2d 451, 453 (8th Cir. 1967), revg. a Memorandum Opinion of this Court; Haag v. Commissioner, 88 T.C. 604 (1987), affd. without published opinion 855 F.2d 855 (8th Cir. 1988). To establish the existence of a debtor-creditor relationship, there must be a good faith intent on the part of the debtor to make repayment and a good faith intent on the part of the creditor to enforce repayment. Fisher v. Commissioner, 54 T.C. 905, 910 (1970). Thus, debt exists where there is a mutual expectation of an unconditional obligation by the borrower to repay. Diamond Bros. Co. v. Commissioner, 322 F.2d 725 (3d Cir. 1963), affg. a Memorandum Opinion of this Court; Ludwig Baumann & Co. v. Commissioner, 312 F.2d 557 (2d Cir. 1963), affg. a Memorandum Opinion of this Court; Fisher v. Commissioner, supra; Hoguet Real Estate Corp. v. Commissioner, 30 T.C. 580, 601 (1958); Southeastern Aviation Underwriters, Inc. v. Commissioner, T.C. Memo. 1966-75. *141 If petitioner's issuance of T.U.'s for goods and services was debt, petitioner had to have, at the time of issuance of T.U.'s, an unconditional obligation to repay the value of the goods and services it received from members, and its members had to have an enforceable right and intention to secure repayment. Haag v. Commissioner, supra at 616. Petitioner did not have an unconditional obligation to repay at the time it issued T.U.'s to its members. Petitioner had no duty to account to its members if the usefulness of T.U.'s was eradicated by petitioner's use, exchange, or sale of its property. In Pervier v. Commissioner, T.C. Memo. 1989-344, we considered whether *201 "trade dollars" issued by a barter exchange for goods and services were the equivalent of notes (i.e., purchase money debt), evidencing the exchange's obligation to its members for the currency equivalent of the amount of trade dollars issued. At issue were "excess" trade dollars, i.e., those not earned and included in income as commissions by the exchange. For the issuance of trade dollars *142 to be debt, we noted that the exchange must have, at the time of issuance of trade dollars, an unconditional obligation to repay the value of the goods and services it receives, and its members must have an enforceable right and intention to secure repayment. The exchange in Pervier did not have the funds available to pay off the excess trade dollars, and there was no evidence that the exchange members could or would have enforced repayment of the value of the trade dollars issued to them. Thus, we held that the trade dollars issued in excess of commissions earned by the exchange were not loans. For the foregoing reasons, we hold that petitioner recognized income when it acquired property from its members in exchange for the issuance of T.U.'s. Correspondingly, the cancellation of T.U.'s on the sale of property by petitioner to its members (other than as payment of commissions) is an offset against income. 3. Petitioner's Underpayment of Tax Did Not Result From Its Negligent Omission of Income. Section 6653(a) provides for an addition to tax if any part of an underpayment *143 is due to negligence or intentional disregard of rules and regulations. Negligence is defined as a lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985); Zmuda v. Commissioner, 731 F.2d 1417 (9th Cir. 1984), affg. 79 T.C. 714 (1982). Respondent's determination of a taxpayer's negligence or intentional disregard of rules and regulations is prima facie correct, and the taxpayer bears the burden of proving that he acted reasonably, prudently, and with due care in preparing and filing his Federal income tax returns. Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972); McAlister v. Commissioner, T.C. Memo. 1989-177. The addition to tax for negligence will not be imposed where the failure to report income was due to substantial questions of law and fact on which there can be an honest difference of opinion. Dillin v. Commissioner, 56 T.C. 228, 248 (1971); Lemery v. Commissioner, 54 T.C. 480, 490 (1970); Marcello v. Commissioner, 43 T.C. 168, 182 (1964), *144 affd. in part and remanded in part 380 F.2d 499 (5th Cir. 1967). Petitioner has consistently argued that there was no underpayment of tax because there was no taxable event. At all times petitioner has acted under a good faith belief that there was no taxable gain to petitioner upon its taking possession of members' property to be subsequently transferred to another member. However, we have found that petitioner's accession to wealth in the guise of property and services was a taxable event generating taxable income in an amount equal to the fair market value of those goods and services. In the alternative, petitioner claims that if we hold that it realized taxable income upon taking possession of members' property, no part of such underpayment was due to negligence or intentional disregard of the rules and regulations because the deficiency was due to a mistake of unsettled law on which there can be an honest difference of opinion. Wiggins v. Commissioner, 92 T.C. 869, 873 (1989); Marcello v. Commissioner, supra; Wofford v. Commissioner, 5 T.C. 1152 (1945); Ross v. Commissioner, T.C. Memo. 1956-5. *145 Respondent maintains that petitioner is liable for the negligence addition because the income from each exchange of property for T.U.'s as an accession to its wealth was "obvious," and petitioner reported none of it on its returns for the years at issue. Instead, petitioner reflected the value of the property on Schedule L as a debt arising from a mortgage, note, or bond payable in less than one year. There were no mortgages, notes, or bonds executed and the number of T.U.'s recorded on Schedule L as a debt actually reflects the value of assets received by petitioner with no corresponding obligation to pay for those assets in money or money's worth. Upon consideration of all of the facts and circumstances, we conclude that petitioner's failure to include in income the fair market value of property it received in exchange for T.U.'s was not negligent. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the years at issue, and all rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Kans. Stat. Ann. Sec. 17-6807 (1988) provides: 17-6807. Continuation of corporation after dissolution for purposes of settling and closing business affairs. All corporations, whether they expire by their own limitation or are otherwise dissolved, including revocation or forfeiture of articles of incorporation * * * shall be continued, nevertheless, for the term of three years from such expiration or dissolution * * * bodies corporate for the purpose of prosecuting and defending suits, whether civil, criminal or administrative, by or against them, and of enabling them gradually to settle and close their business, * * * With respect to any action, suit or proceeding begun by or against the corporation either prior to or within three years after the date of its expiration or dissolution, the action shall not abate by reason of the dissolution of the corporation; and the corporation shall, solely for the purpose of such actions, suits or proceeding, be continued as a body corporate beyond the three-year period and until any judgments, orders or decrees thereon shall be executed, without the necessity for any special direction to that effect.↩
3. We note that this equation does not take into account T.U.'s paid by members and received as income by petitioner. However, this is of no consequence since petitioner reported all commission income received on its returns for the years in question.↩