WILLIS L. WRIGHT AND AFTON W. WRIGHT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wright v. Commissioner
Docket No. 309-89
United States Tax Court
T.C. Memo 1992-60; 1992 Tax Ct. Memo LEXIS 65; 63 T.C.M. (CCH) 1965; T.C.M. (RIA) 92060; February 3, 1992, Filed *65 Decision will be entered under Rule 155. G. Randall Klimt and John R. Riley, for petitioners. Thomas N. Thompson, for respondent. SWIFT
SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION SWIFT, Judge: Respondent determined deficiencies in and additions to tax with respect to petitioners' joint Federal income taxes for 1979 through 1983 as follows: Additions to Tax
Year
Deficiency
Sec. 6651(a)(1)
1979
$  72,185
$ 18,046
1980
10,689
2,672
1981
123,373
30,843
1982
35,138
8,785
1983
8,610
2,153
Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. The primary issues for decision are (1) whether the receipt of goods and services by the operator of a barter exchange gives rise to taxable income where the goods and services are paid for by the operator of the barter exchange with borrowed trade units, and (2) whether the repayment of borrowed trade units and whether the contribution of trade units to the barter exchange by the operator of the barter exchange in certain situations give rise to *66 adjustments to income or to deductible ordinary and necessary business expenses or ordinary and necessary expenses of producing income. FINDINGS OF FACT Petitioners resided in Salt Lake City, Utah, at the time their petition in this case was filed. On July 15, 1975, petitioner Willis L. Wright (petitioner) formed a barter exchange as a sole proprietorship. When members of petitioner's barter exchange needed goods and services, they would contact petitioner or employees of the barter exchange for names and telephone numbers of members of the barter exchange who sold the desired goods and services. Trade units were used as the medium of exchange for transactions between members on the barter exchange. Upon joining the exchange, members were required to sign membership agreements and to contribute to the exchange $ 150 in cash. Petitioner would then open trade unit accounts on the exchange in the name of new barter exchange members, and petitioner would credit each new member's trade unit account with 150 trade units. Members used the trade units in their accounts on the barter exchange to purchase goods and services from other members of the exchange, and all members of the *67 exchange were obligated to accept trade units in payment or exchange for goods and services sold to other members of the barter exchange. Upon entering into sales of goods and services on the barter exchange, trade unit accounts of the sellers would be credited on a 1-to-1 basis with the number of trade units equal to the sales price of the goods and services involved in the transactions (i.e., 1 trade unit represented $ 1), and trade unit accounts of the purchasers would be debited with an equivalent number of trade units. Members purchasing goods and services on the exchange also paid petitioner, as operator of the exchange, a 10 percent commission on each purchase. Until approximately 1982, the commissions were paid to petitioner in trade units (i.e., the number of trade units representing the commissions were debited to the trade unit accounts of the purchasers, and they were credited to petitioner's trade unit account). After 1982, commissions were paid to petitioner by the purchasers one half in trade units and one half in cash. When entering into transactions on the barter exchange, sellers were required to phone petitioner and to verify that the purchasers had sufficient *68 trade units in their accounts to pay for the goods and services to be sold. Upon verification, the sellers filled out purchase order forms and sent one copy of the completed form to petitioner. A second copy was given to the purchasers, and a third copy was retained by the sellers. Unless authorized by the exchange to exceed their trade unit account balances, members of the exchange were allowed by petitioner to make purchases on the exchange only to the extent of the trade units in their trade unit accounts. It was not uncommon, however, for petitioner to authorize members of the exchange to purchase goods and services with trade units borrowed by them from the exchange. Exchange members were nominally obligated to pay to the exchange or to petitioner in cash the amount or value (on a 1-to-1 basis) of any trade units borrowed from the exchange within 30 days of terminating their memberships in the exchange, and petitioner, on receipt of such payments, apparently would contribute to the exchange the number of trade units represented by such payments received. When terminated members failed to pay to petitioner the amount reflecting the outstanding balance of the borrowed trade *69 units in their accounts, petitioner generally attempted collection through legal action. Petitioner was successful in obtaining judgments in approximately one-third of the lawsuits that were filed. Petitioner himself often purchased goods and services on the barter exchange. Because petitioner did not always have sufficient trade units in his trade unit account to pay for his own purchases, petitioner himself occasionally borrowed trade units from the exchange, and a negative or deficit balance occasionally existed in petitioner's own trade unit account. While members of the exchange knew that purchases could be made on the exchange with borrowed trade units, only petitioner's accountant knew that petitioner also made purchases on the exchange with borrowed trade units. To the extent petitioner received trade units in a year (through sales petitioner himself made on the exchange and through commissions petitioner earned) and to the extent petitioner did not spend the trade units in his account for purchases on his own behalf, trade units in petitioner's trade unit account were used to repay the trade units petitioner had borrowed from the exchange. In order to maintain what *70 petitioner considered the fiscal integrity of the exchange's trade unit accounts (i.e., in order to minimize the deficit in total net trade units circulating within the exchange), trade units that had been borrowed by members of the exchange and that petitioner was unsuccessful in recovering from members upon termination of their memberships were charged or debited against the balance of the trade units in petitioner's personal trade unit account on the barter exchange. Failure of petitioner to account, in some way, for unreimbursed deficit balances in the trade unit accounts of terminated members would have caused a continuing imbalance within the barter exchange between trade units credited to members' accounts and trade units debited to members' accounts, which imbalance would have jeopardized the exchange. The barter exchange prepared and mailed to all of its members monthly statements summarizing the transactions in the members' trade unit accounts. Petitioners' Federal income tax returns for 1979 through 1983 were untimely filed. Petitioner concedes that the trade units he received each year from sales and commissions constitute taxable income, but (on the theory that borrowed *71 trade units represent true indebtedness) petitioner argues that the fair market value of the goods and services petitioner purchased in 1979 and 1980 that petitioner paid for with borrowed trade units did not constitute taxable income. Petitioner argues alternatively that the trade units petitioner used in 1981, 1982, and 1983 to repay trade units he had borrowed from the exchange qualify as adjustments to or as deductions from the income associated with the trade units petitioner received each year. Further, petitioner argues that the trade units he contributed to the barter exchange with respect to borrowed trade units of terminated members in order to keep the trade unit accounts in balance and to preserve the integrity of the exchange qualify as ordinary and necessary business expenses or as ordinary and necessary expenses of producing income. On the theory that borrowed trade units do not represent true indebtedness and on the assumption that all trade units debited to petitioner's account represented the purchase of goods and services by petitioner, respondent argues that the value of the goods and services petitioner purchased on the barter exchange in 1979 and 1980 with *72 borrowed trade units constitutes additional income to petitioner in 1979 and 1980, and respondent included in that calculation 54,768 trade units for 1979 and 65,988 trade units for 1980 that represented trade units that petitioner contributed to the exchange and charged or debited to his own trade unit account as a result of unrecovered borrowed trade units of terminated members. Respondent also argues that petitioner for 1981, 1982, and 1983 is not entitled to any deductions with respect to trade units petitioner used to repay trade units he had borrowed from the exchange nor with respect to trade units petitioner contributed to the exchange as a result of unrecovered borrowed trade units of terminated members. Respondent also argues that petitioners are liable for additions to tax for failure to timely file their Federal income tax returns for the years in issue. OPINION Gross income includes all income whether received in the form of money, property, or services. Sec. 61(a); sec. 1.61-1, Income Tax Regs. The fair market value of trade units received by members of barter exchanges upon the sale of goods and services is generally includable in the gross income of the sellers *73 in the year the trade units are received. Baker v. Commissioner, 88 T.C. 1282, 1288 (1987); Pervier v. Commissioner, T.C. Memo. 1989-344. Conversely, the purchase and receipt of goods and services by members of barter exchanges give rise to taxable income to the purchasers of the goods and services when payment is made with borrowed trade units unless the purchasers have a real obligation and a true indebtedness to repay the borrowed trade units. Barter Systems, Inc. of Wichita v. Commissioner, T.C. Memo. 1990-125; Pervier v. Commissioner, supra. In order for the borrowed trade units to be treated as a true indebtedness there must be both a good faith intent on the part of the purchasers to make repayment of borrowed trade units and a good faith intent on the part of the operators of barter exchanges to enforce repayment. Fisher v. Commissioner, 54 T.C. 905, 909-910 (1970). The purchasers must have unconditional obligations to repay the value of borrowed trade units. Haag v. Commissioner, 88 T.C. 604, 616 (1987), affd. without published opinion 855 F.2d 855 (8th Cir. 1988). *74 Barter Systems, Inc. of Wichita v. Commissioner, supra, and Pervier v. Commissioner, supra, held that the repayment obligations of members of the barter exchanges involved in those cases with respect to borrowed trade units were too indefinite to be treated as true indebtedness, and members of the exchanges were required to include in income the value of the goods and services purchased with borrowed trade units in the year the goods and services were received. As indicated, petitioner herein argues that he had a true indebtedness to repay his barter exchange trade units that he borrowed from the exchange in 1979 and 1980 in order to purchase goods and services. Petitioner therefore argues that neither the borrowed trade units nor the receipt of the goods and services received in connection with the borrowed trade units give rise to taxable income. We disagree. There is no evidence in this case that members of petitioner's barter exchange, other than petitioner's accountant, knew that petitioner borrowed trade units from the exchange or that other members of the exchange ever intended to require petitioner to repay to the exchange *75 trade units petitioner had borrowed. Indeed, petitioner owed the borrowed trade units not to any of the other members of the exchange, but rather to himself as owner and operator of the exchange. Petitioner alleges that he had a financial net worth in each of the years before us sufficient to pay the face amount of the total trade units he borrowed from the exchange. That allegation, however, does not establish that petitioner could or would have been required to repay into his own barter exchange the value of the trade units he borrowed. The value of the goods and services petitioner purchased each year with borrowed trade units is includable in petitioner's income in the year the goods and services were received. Petitioner's alleged indebtedness reflected by the borrowed trade units is too indefinite to be recognized as a true indebtedness for Federal income tax purposes. The trade units, however, charged to petitioner's trade unit account in 1979 and 1980 relating to unrecovered borrowed trade units of terminated members (namely, 54,768 trade units for 1979 and 65,988 trade units for 1980) do not constitute additional income to petitioner for 1979 and 1980 because they do *76 not reflect the receipt of goods and services. In his reply brief, petitioner argues for the first time that including in his income the fair market value of the goods and services purchased with borrowed trade units would constitute an impermissible change in his accounting method. This argument was not timely raised and will not be considered. Shelby U.S. Distributors v. Commissioner, 71 T.C. 874, 885 (1979). As explained, petitioner argues alternatively that if he is required to include in his income the fair market value of goods and services purchased with borrowed trade units, he should be entitled to adjustments or deductions from his income in 1981, 1982, and 1983 with respect to the trade units he repaid into the exchange as a repayment of trade units he had borrowed from the exchange. We agree. Without the allowance of adjustments or deductions to petitioner's income with respect to trade units petitioner repaid into the exchange in 1981, 1982, and 1983, petitioner, in effect, would be taxed twice on the same income -- when he received the goods and services in exchange for borrowed trade units (taxable because the borrowed trade units are not treated *77 as true indebtedness) and again when petitioner in fact repaid the borrowed trade units with trade units received. Certainly, the nominal indebtedness associated with borrowed trade units used to purchase goods and services should be recognized as a true indebtedness if and when those trade units are actually repaid, and respondent has not made any valid argument to the contrary. Such repayment constitutes a payment with respect to the production of income (namely, the income charged to petitioner when he received the goods and services), and petitioner's repayment supports the deductions claimed under either sections 162 or 212. To the extent, therefore, that petitioner borrowed trade units in 1979 and 1980 (or in other years) to purchase goods and services on his barter exchange, to the extent petitioner is or has been charged with income with respect thereto, and to the extent petitioner made repayment in 1981, 1982, and 1983 of the borrowed trade units, petitioner is entitled to deductions from his income in 1981, 1982, and 1983. Petitioner also argues that the trade units that were charged to his personal trade unit account in 1981, 1982, and 1983, in order to repay to the *78 barter exchange borrowed trade units of terminated members are deductible as ordinary and necessary business expenses. Taxpayers may deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * * ". Sec. 162(a). Expenses are ordinary for purposes of section 162 if they are normal or customary under the circumstances. Commissioner v. Lincoln Savings and Loan Association, 403 U.S. 345, 353 (1971). Expenses are necessary for purposes of section 162 if they are appropriate and helpful in carrying on the taxpayer's trade or business. Commissioner v. Lincoln Savings and Loan Association, supra; Colorado Springs National Bank v. United States, 505 F.2d 1185, 1191 (10th Cir. 1974); Heineman v. Commissioner, 82 T.C. 538, 543 (1984). In Baker v. Commissioner, 88 T.C. 1282 (1987), and Exchange Enterprises of Salt Lake, Inc. v. Commissioner,T.C. Memo. 1987-414, barter exchange operators were denied deductions under section 162 with respect to negative balances in the accounts of terminated barter exchange members *79 because the taxpayers had failed in any way to pay the amounts in question. Neither case addressed the situation where the borrowed trade units of terminated members of the barter exchange were actually charged against positive trade units in the trade unit accounts of the operators of the barter exchanges. Petitioner's business was the operation of a barter exchange. In that capacity, petitioner allowed some members of the exchange to purchase goods and services on the exchange with borrowed trade units. In order to operate the exchange and to maintain a balance in the trade units available on the exchange, petitioner maintained records of all of the members' trade unit accounts and sought to recover from terminated members the value of borrowed trade units. Further, when unsuccessful in recovering borrowed trade units and when petitioner had a credit balance in his personal trade unit account, petitioner charged unrecovered borrowed trade units to his personal account. Such charges constituted payment by petitioner of borrowed trade units with trade units that petitioner included in his income and with respect to which petitioner therefore had a tax basis. Secs. 1011 and *80 1012. Petitioner's payments in 1981, 1982, and 1983 of unrecovered borrowed trade units were ordinary and necessary to the operation and continuation of petitioner's barter exchange. Minimizing the amount of borrowed trade units within the exchange and keeping the trade unit accounts in some relative balance obviously was necessary and appropriate to the operation of petitioner's barter exchange and was critical to the preservation of the value of the trade units. Petitioner is entitled to a deduction under section 162 with respect to uncollected borrowed trade units of terminated members that were charged to his trade unit account. Petitioners have provided no credible reason for the late filing of their joint Federal income tax returns for 1979 through 1983. We sustain respondent's imposition of section 6651(a)(1) additions to tax for each year. Decision will be entered under Rule 155.