KENT T. EVANS AND GLORIA F. EVANS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Evans v. Commissioner
Docket No. 17150-88
United States Tax Court
T.C. Memo 1992-276; 1992 Tax Ct. Memo LEXIS 298; 63 T.C.M. (CCH) 3001; May 13, 1992, Filed *298 Decision will be entered under Rule 155. Towner Leeper and John E. Leeper, for petitioners. Steven B. Bass, for respondent. COHEN
COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined deficiencies of $ 1,043 and $ 2,258 in petitioners' Federal income tax for 1980 and 1981, respectively. In the First Amendment to Answer, respondent asserted an additional deficiency of $ 1,369 and an addition to tax under section 6653(a) of $ 121 for 1980 and additions to tax of $ 113 and 50 percent of the interest due on $ 2,258 under section 6653(a)(1) and (2) for 1981. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. The issues for decision are: (1) Whether petitioners properly included in income the value of barter exchange trade units received in 1980 and 1981; (2) whether petitioners completed a sale of stock in 1980 and, if so, the amount of gain that they should have reported on their Federal income tax return and, if not, whether they should have reported any income from the transaction; and (3) whether petitioners *299 are liable for additions to tax for negligence pursuant to sections 6653(a) and 6653(a)(1) and (2) for 1980 and 1981, respectively. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Kent T. and Gloria F. Evans (petitioners) resided in El Paso, Texas, at the time they filed their petition. Petitioners were shareholders and employees of Barter Systems, Inc. of Wichita (Barter Systems) during 1980 and 1981. Barter Systems operated as a barter exchange and was a vehicle for the exchange of goods and services among its members. Barter Systems' unit of exchange was a "trade unit". Trade units were book entries. They could not be used in the same manner as cash. Merchandise could be purchased with trade units only at full retail price. The stated value of a trade unit was one dollar. Members' exchange accounts were credited or debited with trade units to keep track of barter transactions. Barter Systems offered to all of its employees the choice of having trade units credited to their exchange accounts in lieu of receiving part of their salaries in cash. For each dollar of salary, employees had *300 the choice of receiving one dollar in cash or of having two trade units credited to their exchange accounts. Employees could receive up to 50 percent of their salaries in trade units. This offer was not connected to stock ownership. In 1980, 10,564 trade units were credited to petitioners' exchange account in lieu of $ 5,282 of their salaries. In 1981, 18,370 trade units were credited to petitioners' exchange account in lieu of $ 9,185 of their salaries. Petitioners did not value trade units at one dollar each. They did not believe that the receipt of trade units constituted taxable income in excess of the amount of salary owed to them by Barter Systems. Petitioners' accountant advised them that the receipt of trade units in lieu of salary did not constitute taxable income in an amount greater than the amount of salary owed to them by Barter Systems. On their Federal income tax returns for 1980 and 1981, petitioners included in income only the amount of salary owed to them by Barter Systems, whether paid to them in cash or in trade units. In 1980, petitioners agreed to sell 4,500 shares of their stock in Barter Systems to Michael Land (Land) for $ 30,000. Petitioners' basis *301 in the 4,500 shares of stock was $ 12,600. Land executed an installment note dated June 1, 1980, payable to Kent T. Evans in the amount of $ 30,000 plus interest (the note). Petitioners were concerned about Land's financial situation and his ability to complete the transaction. Petitioners therefore retained possession of the stock certificates and the right to vote the stock. Petitioners did not consider the sale complete unless and until they received all of the payments due under the note. In 1980, petitioners received from Land a single payment of $ 2,500 of principal and $ 250 of interest pursuant to the note. Land made no further payments. Petitioners' attorney advised them not to pursue collection against Land because they had no reasonable prospect of recovery. Petitioners' accountant advised them to reduce their basis in the 4,500 shares of stock by the $ 2,500 principal payment that they had received from Land. Petitioners did not report the receipt of principal or interest on their Federal income tax return for 1980. In the notice of deficiency, respondent determined that petitioners' receipt of trade units from Barter Systems constituted dividend income in 1980 *302 and 1981 to the extent that the fair market value of the trade units received exceeded the amount that petitioners had included in income. She also determined that petitioners had completed a sale of the 4,500 shares of stock to Land in 1980 and that petitioners did not report income from an installment payment that they had received pursuant to that sale. In the First Amendment to Answer, respondent asserted that the sale did not qualify as an installment sale and that the full amount of gain on the sale should have been reported in 1980, thereby increasing the deficiency. Respondent also asserted additions to tax for negligence. OPINION Income from Trade Units
Respondent contends that, upon the receipt of trade units from Barter Systems, petitioners realized dividend income in the amount of 50 cents per trade unit. Petitioners argue that their receipt of trade units from Barter Systems did not constitute dividend income because they did not receive the trade units "with respect to" their stock. Petitioners have the burden of proof. Rule 142(a). Section 301(a) provides that "a distribution of property * * * made by a corporation to a shareholder with respect to its *303 stock shall be treated in the manner provided in subsection (c)." Section 301(c)(1) provides that "That portion of the distribution which is a dividend * * * shall be included in gross income." Respondent, relying on Palmer v. Commissioner, 302 U.S. 63 (1937); Dellinger v. Commissioner, 32 T.C. 1178 (1959); Nelson v. Commissioner, T.C. Memo. 1982-361, affd. 767 F.2d 667 (10th Cir. 1985); and section 1.301-1(j), Income Tax Regs., asserts that a bargain sale by a corporation to its shareholder is a distribution to the shareholder that is subject to section 301 and that the shareholder has income in the amount of the difference between the amount paid for the property and its fair market value. Section 1.301-1(c), Income Tax Regs., however, provides that "Section 301 is not applicable to an amount paid by a corporation to a shareholder unless the amount is paid to the shareholder in his capacity as such." Thus, if petitioners did not receive the trade units in their capacity as shareholders of Barter Systems, they did not realize dividend income. During the years in issue, Barter Systems offered to its employees *304 the choice of receiving trade units in lieu of monetary compensation at the rate of 50 cents per trade unit. This offer was open to all employees regardless of whether or not they owned stock in Barter Systems. The maximum number of trade units employees could receive was determined by the employee's salary and was unrelated to the employee's stock ownership, if any. Petitioners were employees of Barter Systems during the years in issue and accepted this offer in the same manner and subject to the same rules as did other employees of the corporation. We conclude that petitioners received the trade units from Barter Systems in their capacity as employees of Barter Systems rather than in their capacity as shareholders. The receipt of the trade units from Barter Systems, therefore, did not constitute dividend income. Respondent also contends that, if the receipt of trade units did not constitute dividend income, the deficiency should nevertheless be sustained because the receipt of trade units represented additional compensation income in the amount of 50 cents per trade unit. Petitioners assert that this theory is a new issue first raised by respondent in her brief. They argue *305 that they would be prejudiced by our consideration of this theory and that, therefore, the Court should not address it. The Court will not address theories raised for the first time in a party's brief if consideration of the theory will result in prejudice to the opposing party. Seligman v. Commissioner, 84 T.C. 191, 198 (1985), affd. 796 F.2d 116 (5th Cir. 1986). "Of key importance in evaluating the existence of prejudice is the amount of surprise and the need for additional evidence on behalf of the party in opposition to the new position." Leahy v. Commissioner, 87 T.C. 56, 64 (1986). On their Federal income tax returns, petitioners reported the receipt of trade units as compensation. Only the amount of income represented by the trade units is disputed. We therefore conclude that petitioners would not be prejudiced by our consideration of respondent's theory that petitioners failed to include in income the full value of the trade units they received from Barter Systems, and we will consider it. In the notice of deficiency, respondent determined that petitioners' receipt of trade units from Barter Systems constituted *306 additional income to them to the extent that the fair market value of the trade units received exceeded the amount that petitioners had included in income pursuant to the theory that such amounts were dividends. Petitioners have established that they did not receive dividend income from Barter Systems. Petitioners were not required to prove the fair market value of the trade units received in order to meet their burden of proof. Respondent now contends that petitioners' receipt of the trade units constituted additional compensation income to the extent that the fair market value of the trade units received exceeded the amount that petitioners had included in income. "The two theories are mutually exclusive; if * * * [petitioners] received the * * * [trade units for less than their fair market value] as dividends * * * [they] did not receive them as compensation for services, and vice versa. Different kinds of evidence are required to refute each theory." Drew v. Commissioner, T.C. Memo. 1972-40. Because respondent has proposed a new theory different from and inconsistent with her determination of the deficiency, respondent bears the burden of proof. Rule *307 142(a); Tauber v. Commissioner, 24 T.C. 179, 185 (1955). Respondent, relying on Barter Systems, Inc. of Wichita v. Commissioner, T.C. Memo. 1990-125, contends that the fair market value of the trade units petitioners received was one dollar each. The parties, however, did not stipulate that this case should be governed by Barter Systems, Inc. of Wichita v. Commissioner, supra. Furthermore, that case did not establish the fair market value of a trade unit and even suggested that the fair market value of a trade unit was less than one dollar. The evidence suggests that the fair market value of the trade units petitioners received was less than one dollar each. The trade units could not be used in the same manner as cash. Merchandise could be purchased with trade units only at full retail price. Petitioners were able to receive trade units for 50 cents each and did not value them at one dollar each. Respondent has presented no evidence to support her contention that the fair market value of the trade units was one dollar each and therefore has failed to meet her burden of proof. We conclude that petitioners did *308 not have compensation income in addition to that which they reported from the receipt of trade units in 1980 and 1981. Sale of Stock
Respondent contends that petitioners failed to report the gain from the sale of 4,500 shares of their stock in Barter Systems in 1980. Petitioners argue that there was not a completed sale for tax purposes in 1980 and that therefore they were not required to recognize gain. "The question of when a sale is complete is essentially a question of fact. * * * The test to be applied is a practical test, taking into account all the facts and circumstances and viewing the transaction in its entirety." TennesseeNatural Gas Lines v. Commissioner, 71 T.C. 74, 83 (1978). A completed sale has occurred when "the greater bundle of rights and attributes of ownership, including title, possession and management, and the burdens and benefits accompanying same" pass to the purchaser. Lowe v. Commissioner, 44 T.C. 363, 369 (1965). In this case, petitioners had investigated Land's financial situation and were concerned that he may not have the means to complete the sale. Petitioners therefore retained the stock certificates *309 and voting rights associated with them. Petitioners retained the attributes of ownership with respect to the stock in Barter Systems. We conclude that petitioners did not complete a sale of 4,500 shares of their stock in Barter Systems in 1980 and that petitioners did not realize capital gain in 1980. Petitioners did, however, receive from Land a payment of $ 2,750 in 1980 pursuant to the note. Although the sale was never completed, petitioners kept the money that Land had paid to them. The undisputed evidence establishes that petitioners received income in the amount of $ 2,750 in 1980. In their brief, petitioners admit that "at the end of 1980 petitioners owned the same stock plus $ 2,750 cash". Payments received pursuant to an uncompleted sales agreement constitute ordinary income. Doyle v. Commissioner, 110 F.2d 157, 158 (2d Cir. 1940), affg. 39 B.T.A. 940 (1939); Johnson v. Commissioner, 32 B.T.A. 156, 161 (1935). Land's payment of $ 2,750, therefore, constituted ordinary income to petitioners in 1980, the year in which they received the payment but in which it became evident that the sale would not be completed. *310 Negligence
Respondent contends that petitioners were negligent in not reporting as income the amount that they received from Land. Because the additions to tax for negligence were not determined until respondent's First Amendment to Answer, respondent bears the burden of proof. Rule 142(a). Negligence is defined as the lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under similar circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Good faith reliance on the advice of a professional negates a finding of negligence. Woodbury v. Commissioner, 49 T.C. 180, 200 (1967). Petitioners consulted with their accountant concerning how this transaction should be treated on their Federal income tax return. Petitioners followed their accountant's advice regarding the treatment of the payment by Land. Respondent has not persuaded us that such reliance by petitioners was unreasonable. We therefore conclude that petitioners were not negligent in their treatment of this transaction on their Federal income tax return. To reflect the foregoing, Decision will be entered under Rule 155 *311 .