T.C. Memo. 1999-189

UNITED STATES TAX COURT

BEATRICE DIPIERRO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12950-97.                    Filed June 9, 1999.

     R determined deficiencies in P's income tax
liability on account of petitioner's failure to account
for certain cash transactions.
     <u>Held</u>:  P has failed to prove nontaxable sources
for the cash transactions, which is prima facie
evidence of income.  See <u>Tokarski v. Commissioner</u>,
87 T.C. 74 (1986).
     <u>Held</u>, <u>further</u>, P is liable for tax on self-
employment income.
     <u>Held</u>, <u>further</u>, P is liable for sec. 6662(a),
I.R.C., accuracy-related penalty.

<u>B. Gray Gibbs</u>, for petitioner.

<u>Judith C. Winkler</u> and <u>Howard P. Levine</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, Judge:  By notice of deficiency dated March 31, 1997 (the deficiency notice), respondent determined deficiencies in petitioner's Federal income taxes and addition to tax, and accuracy-related penalties as follows:

| Year | Deficiency | Addition to tax Sec. 6651(a)(1) | Accuracy-related penalty Sec. 6662(a) |
|------|-----------|------------------------|------------------------|
| 1992 | $19,276 | -- | $3,816 |
| 1993 | 5,811 | $486 | 1,162 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The parties have filed a stipulation of settled issues, in which petitioner concedes certain issues.  Those concessions are accepted.  The issues remaining for decision are:  (1) Whether petitioner omitted from gross income $25,000 and $21,250 for 1992 and 1993, respectively, (2) whether those amounts constitute income from self-employment, and (3) whether petitioner is liable for accuracy-related penalties for both 1992 and 1993 on account of negligence or disregard of rules or regulations.

FINDINGS OF FACT

Introduction

Some facts have been stipulated and are so found. The Stipulations of Facts filed by the parties, with attached exhibits, are incorporated herein by this reference.

At the time the petition was filed, petitioner resided in Belleair, Florida.

Petitioner's Background

Petitioner moved to the United States from Bogota, Colombia, in 1959, married Alfred DiPierro in 1960, and was divorced from him in 1987 (the divorce). Two children were born of that marriage, a son, Gary, born in 1961, and a daughter, Audrey, born in 1964.

Petitioner's Property

In the divorce, petitioner received a condominium apartment in Belleair, Florida (the Belleair property), in which she resides, four houses held for rental in California (the California rental properties), a 15-unit apartment complex in Dunedin, Florida (the Dunedin property), and $50,000 in cash.

Petitioner sold the Dunedin property in 1989, receiving $45,000 in cash and a note in the principal amount of $120,000 (the $120,000 note), calling for monthly payments of $2,549.66, commencing on May 27, 1989. At the end of 1992, petitioner

received a payment of $30,000 in discharge of the remaining obligation under the $120,000 note.

At the time of trial, petitioner still owned three of the California rental properties. During 1992 and 1993, two of those properties rented for between $675 and $750 a month and one rented for between $525 and $550 a month. Petitioner sold the fourth California rental property in October 1992, receiving a note in the principal amount of $110,000, calling for monthly payments of $945. Prior to its sale, the fourth California property rented for between $575 and $625 a month. Most of the rental payments petitioner received with respect to the California properties were received in cash, collected by her or her son, Gary. When Gary collected the rental payments, he deposited them in a bank account petitioner maintained in California, and she would write checks on that account. Petitioner relied on her memory to report her rental receipts to her accountant (who prepared her Federal income tax return).

In April 1990, petitioner purchased a two-bedroom condominium apartment in Las Vegas, Nevada (the Las Vegas property), for $145,000, in cash. She obtained that sum from the proceeds of the sale of the Dunedin property and a loan of $110,000 from NCNB National Bank. The Las Vegas property was held for rental, for between $800 and $1,100 a month.

In April 1992, petitioner applied for a loan to refinance the Belleair property. In her loan application, petitioner represented that her net worth was $933,354.

Petitioner's Bank Accounts

Petitioner owned the following bank accounts in 1992 and 1993:

    Fortune Bank, account No. 002-9072131
    NCNB National Bank, account No. 3502977933
    NCNB National Bank, account No. 3506708708
    NCNB National Bank, account No. 3510298128
    NCNB National Bank, account No. 3706446642
    Hawthorne Savings and Loan Assoc., account No. 10130059-8
    Hawthorne Savings and Loan Assoc., account No. 10133739-2

During the course of respondent's examination of petitioner's 1992 and 1993 returns, petitioner failed to provide respondent complete information concerning those bank accounts.

Bank Transactions

Petitioner deposited $25,000 in cash into NCNB National Bank, account No. 3502977933 on February 10, 1992 (the NCNB deposit). Petitioner deposited $10,000 in cash into Fortune Bank, account No. 002-9072131 on December 8, 1993 (the Fortune Bank deposit).[1] On that same date, petitioner withdrew $10,000

---

[1] That $10,000 deposit is shown in Ex. 13-M, p. 13, the Fortune Bank statement for account No. 002-9072131 for Dec. 15, 1993. Ex. 5-E contains a true copy of Internal Revenue Form 4789, Currency Transaction Report, filed by Fortune Bank, which shows a $10,000 deposit on Dec. 8, 1993, to petitioner's account No. 0029064821. We cannot resolve that discrepancy. The parties seem satisfied that there was only one cash deposit of
(continued...)

from that Fortune Bank account.  Petitioner purchased a check with cash at NationsBank (formerly NCNB National Bank) on December 9, 1993, in the amount of $11,250 (the NationsBank purchase).

Petitioner's Returns

Petitioner did not prepare her own Federal income tax returns for 1992 and 1993.  She relied on her accountant.

Respondent's Adjustments

Among the adjustments made by respondent to petitioner's 1992 and 1993 gross income are additions in the amounts of $25,000 and $21,250 for 1992 and 1993, respectively.  In the notice of deficiency, respondent explains those adjustments as follows:  "It is determined that during the taxable years 1992 and 1993, the cash of $25,000 and $21,250, respectively, that you deposited in various banks was not reported on your income tax returns."  Respondent identifies the cash deposits in question as the NCNB deposit, the Fortune Bank deposit, and the NationsBank purchase.

---

[1](...continued)
$10,000 to petitioner's account in Fortune Bank on Dec. 8, 1993, and we so find.

OPINION

I. Deficiencies

    A. Normal Tax

        1. Introduction

Respondent adjusted (increased) petitioner's gross income for 1992 and 1993 on account of unexplained cash deposits and an unexplained cash purchase: $25,000 deposited to NCNB National Bank, account No. 3502977933 on February 10, 1992 (the NCNB deposit), $10,000 deposited to Fortune Bank account No. 002-9072131 on December 8, 1993 (the Fortune bank deposit), and $11,250 expended to purchase a check at NationsBank on December 9, 1993 (the NationsBank purchase, collectively, the cash transactions). Petitioner does not dispute the fact of the cash transactions. Petitioner claims that the NCNB deposit was of funds received by petitioner as gifts from her children, Gary and Audrey, and, accordingly, does not represent an item of gross income. Petitioner claims that the Fortune Bank deposit and the NationsBank purchase were from amounts reported by petitioner as gross income for 1993 and, thus, do not represent an item of unreported gross income. Respondent relies principally on petitioner's failure to prove her claims.

        2. Respondent's Examination

Petitioner argues that respondent's examination in this case was inadequate: "The auditor in this case did little or nothing

to determine whether the deposits [cash transactions] were from a taxable source." We disagree.

The record contains copies of three Forms 4789, Currency Transaction Reports, relating to the NCNB deposit, the Fortune Bank deposit, and the NationsBank purchase, respectively. Those reports may have triggered respondent's examination of petitioner's 1992 and 1993 Federal income tax returns. Both the tax auditor and Appeals officer concerned with the examination of those returns testified. They told of confusing and contradictory explanations by petitioner concerning the cash transactions. The Appeals officer testified that petitioner "could never specifically tell me what the underlying source of those deposits were for either 1992 or 1993. She could not recall." The tax auditor testified that, initially, petitioner's representative stated that there had been no sources of nontaxable income. We interpret petitioner's initial representations to respondent to be that there were no unaccounted-for receipts that could be the source of the cash transactions. Petitioner then told the tax auditor that the NCNB deposit was proceeds from a loan from her daughter. She then provided unverifiable statements from both her daughter and son that each had made a loan to her. Petitioner's testimony did not contradict the substance of respondent's agents' narrative.

We said early on:  "By design the statute contemplates the keeping by a taxpayer of accounts and records from which his correct income can be determined, and in the absence of such books of account the respondent must determine or verify his income from the records or sources that are available."  Estate of Haque v. Commissioner, 45 B.T.A. 104, 109-110 (1941), affd. 132 F.2d 775 (2d Cir. 1943), affd. sub nom. Commissioner v. Uniacke, 132 F.2d 781 (2d Cir. 1942).  See sec. 6001; sec. 1.6001-1(a), Income Tax Regs.  Petitioner did not keep adequate records of her rent receipts.  She failed to provide the Appeals officer or tax auditor with complete information concerning her bank accounts.  She provided to them unverifiable explanations as to the claimed gifts from her children.  Her explanations to them of nontaxable sources for the cash transactions were confusing and contradictory.  The records and sources available during the examination were inadequate to explain the cash transactions as deriving from nontaxable sources, and respondent adjusted (increased) petitioner's gross income to reflect his determination that no nontaxable sources existed.

### 3.  Burden of Proof

The general rule is that the burden of proof is upon petitioner, see Rule 142(a), which she must carry by a preponderance of the evidence, e.g., Schaffer v. Commissioner, 779 F.2d 849, 858 (2d Cir. 1985), affg. in part and remanding in

part Mandina v. Commissioner, T.C. Memo. 1982-34. Petitioner argues, however, that this case presents an exception to the general rule because the notice of deficiency, at least with respect to the items here in question, is arbitrary and without foundation. Petitioner cites Llorente v. Commissioner, 649 F.2d 152 (2d Cir. 1981), affg. in part revg. in part, and remanding 74 T.C. 260 (1980). In Llorente, the Commissioner's notice of deficiency was based on his reconstruction of the taxpayer's income from drug dealing, and in the view of the Court of Appeals there was inadequate evidence that the taxpayer had actually purchased or sold cocaine during the period in issue. In Tokarski v. Commissioner, 87 T.C. 74 (1986), we distinguished Llorente (which would have applied under the doctrine of Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971)), on the basis that, in that case (Tokarski), which involved a bank deposit of $30,000, there was no question that the taxpayer received that sum: "Under these circumstances, we hold that there is no requirement that respondent produce evidence linking petitioner to an income-producing activity as a precondition to requiring petitioner to meet his burden of proof." Tokarski v. Commissioner, 87 T.C. at 76-77 (fn. ref. omitted). We generalized: "A bank deposit is prima facie evidence of income and respondent need not prove a likely source of that income." Id. at 77. The same holds true for a cash

expenditure.  See <u>Bevan v. Commissioner</u>, T.C. Memo. 1971-312, affd. 472 F.2d 1381 (6th Cir. 1973); see also <u>Reed v. Commissioner</u>, T.C. Memo. 1997-388, affd. without published opinion 155 F.3d 560 (4th Cir. 1998).

<u>Blohm v. Commissioner</u>, 994 F.2d 1542 (11th Cir. 1993), affg. T.C. Memo. 1991-636, is a decision of the Court of Appeals for the Eleventh Circuit, which, if it were squarely on point, we would be bound to follow under the <u>Golsen</u> doctrine.  In <u>Blohm</u>, the Court of Appeals said:  "For the presumption [of correctness] to adhere in cases involving the receipt of unreported income, however, the deficiency determination must be supported by some evidentiary foundation linking the taxpayer to the alleged income-producing activity."  <u>Blohm v. Commissioner</u>, 994 F.2d at 1549 (internal quotation marks omitted).  <u>Blohm</u> is distinguishable for the same reason that <u>Llorente v. Commissioner</u>, <u>supra</u>, would be distinguishable were this case appealable to the Court of Appeals for the Second Circuit; viz, we are here dealing with <u>cash</u> deposits and expenditures, which is prima facie evidence of income.

Petitioner bears the burden of proof.

### 4. <u>1992 Adjustment</u>

Respondent adjusted petitioner's 1992 gross income on account of the NCNB deposit ($25,000 deposited into an account of petitioner's on February 10, 1992).  In the petition, petitioner

avers that all the cash transactions were from funds accumulated by petitioner from a 1990 loan to her from NCNB National Bank and from rental income received by her in prior years. On brief, petitioner argues that the source of the NCNB deposit was funds received by petitioner from her children, either as loans or gifts, as evidenced by the testimony of petitioner and her children.

Petitioner's testimony and that of her children concerning the source of the NCNB deposit conflicted on numerous points and was not credible. Petitioner's testimony was particularly unconvincing concerning the actual times, places, manner, and denominations of the supposed gifts of cash to her. Petitioner was not able to remember the details of her son's presenting her with $10,000 in cash or her daughter's presenting her with $20,000 in cash. Upon questioning by the Court, petitioner was not certain when she traveled from California to Florida with the $10,000 her son supposedly gave her and could not recall whether she received $20,000 in cash from her daughter in November 1991 or February 1992. The children's testimony seems particularly incredible given the large sums of money the children supposedly gave their mother in comparison to their modest reported incomes for the years at issue. We do not credit Gary's testimony that he kept $15,000 in $100 bills under the carpet in the closet in his apartment nor his sister Audrey's testimony that she received

more than $30,000 in cash gifts at her wedding, which she kept at home, in her closet (in a safe). We observed the demeanor of petitioner and her children and do not believe that any of them told the truth with respect to the source of the NCNB deposit.

We may reject testimony that is inherently improbable or manifestly unreasonable, even where no contradictory testimony is offered. See, e.g., Boyett v. Commissioner, 204 F.2d 205, 208 (5th Cir. 1953), and the cases cited therein. We accord the testimony of petitioner and her children no weight with respect to the source of the NCNB deposit. Petitioner has failed to prove her claim of a nontaxable source.

### 5. 1993 Adjustment

Respondent adjusted petitioner's 1993 gross income on account of the Fortune Bank deposit ($10,000 deposited into an account of petitioner's on December 8, 1993) and the NationsBank purchase ($11,250 used to purchase a cashier's check on December 9, 1993). Petitioner argues that petitioner's reported income (principally from real estate) explains those cash transactions.

Petitioner has attempted to show from known bank deposits and sources of income that petitioner did not fail to report all of her income for 1993. Petitioner's analysis is flawed. There is in evidence a "Statement of Account Activity" for Hawthorne Savings and Loan Association account No. 10130059-8 (the first

Hawthorne account). That statement shows a transfer into that account from Hawthorne Savings and Loan Association account No. 10133739-2 (the second Hawthorne account) in the amount of $7,627 on August 23, 1993. There is, however, no statement of account activity in evidence with respect to the second Hawthorne account. We cannot, therefore, place any confidence in the completeness of petitioner's bank deposit analysis because we do not have confidence that petitioner took into account all deposits to all of her bank accounts in 1993. Also, petitioner added as deposits into the first Hawthorne account amounts that were withdrawals and not deposits. Finally, petitioner failed to take into account the NationsBank purchase.

Alternatively, petitioner argues that the Fortune Bank deposit is the proceeds of rental income. Petitioner's failure to maintain adequate records of her rental activities gives us no confidence in that claim. Petitioner also argues that the Fortune Bank deposit was withdrawn (the Fortune Bank withdrawal), in cash, on the same day, December 8, 1993, that it was made and used the next day, December 9, 1993, with additional cash, to make the NationsBank purchase. However, petitioner's testimony with regard to those transactions was unclear: petitioner testified that she did not know what she did with the Fortune Bank withdrawal and cannot remember why she made the NationsBank purchase.

Also, there is no currency transaction report in evidence with respect to the Fortune Bank withdrawal. Currency transaction reports are required to be prepared by banking institutions when customers conduct single cash transactions (deposits, withdrawals, exchanges of currency, or other payments or transfers) in amounts of $10,000 or greater. 31 U.S.C. sec. 5313 (1994). We infer from petitioner's failure to offer a currency transaction report for the alleged withdrawal of $10,000 cash that no such withdrawal of cash occurred.

Petitioner has failed to prove nontaxable sources for either the Fortune Bank deposit or the NationsBank purchase.

### 6. Conclusion

Because petitioner has failed to prove nontaxable sources for the cash transactions, respondent's determination of deficiencies with respect to his adjustments made with respect to the cash transactions is sustained.

### B. Tax on Self-Employment Income

Section 1401 imposes a two-part tax on the self-employment income of every individual. An individual's self-employment income depends on his "net earnings from self-employment". See sec. 1402(b). In relevant part, the term "net earnings from self-employment" means the gross income derived by an individual from any trade or business carried on by the individual less allowable deductions attributable to the trade or business. Sec.

1402(a). Respondent determined that petitioner failed to pay self-employment taxes of $3,533 and $3,002 for 1992 and 1993, respectively. Respondent based his determination on petitioner's lack of adequate records establishing that she was not subject to self-employment taxes with respect to the cash transactions. Petitioner argues that she is not liable for self-employment taxes because she did not carry on any trade or business. Petitioner has failed to prove that the cash transactions involved proceeds from a nontaxable source. She has failed to prove that such proceeds did not arise in connection with a trade or business. We sustain respondent's determinations of deficiencies to the extent allocable to the taxes on self-employment income.

## II. Section 6662(a) Accuracy-Related Penalties

Section 6662 provides for an accuracy-related penalty in the amount of 20 percent of the portion of any underpayment attributable to, among other things, negligence or intentional disregard of rules or regulations (hereafter, simply, negligence). Respondent determined section 6662 penalties against petitioner for her negligence with respect to the total underpayment for 1992 and 1993. Petitioner contests the section 6662 penalties only to the extent that they relate to the cash transactions. Negligence has been defined as the failure to exercise the due care of a reasonable and ordinarily prudent

person under like circumstances.  See <u>Neely v. Commissioner</u>, 85 T.C. 934, 947 (1985).  In the petition, petitioner assigns error to respondent's determination of section 6662 penalties with respect to the cash transactions.  However, petitioner does not aver any specific facts in support of her assignment of error.  On brief, petitioner claims that she relied on her accountant properly to prepare her Federal income tax returns for 1992 and 1993.

A taxpayer acts reasonably when she provides her accountant or attorney with all relevant information necessary to prepare her tax return, and she relies, in good faith, on the advice of her attorney or accountant regarding a matter of substantive tax law.  See <u>Jaques v. Commissioner</u>, T.C. Memo. 1989-673, affd. 935 F.2d 104 (6th Cir. 1991); see also <u>United States v. Boyle</u>, 469 U.S. 241, 251 (1985).  The taxpayer, however, bears the ultimate responsibility for the correctness of her income tax return, and good faith reliance on professional advice is not a substitute for compliance with an unambiguous statute that requires no special training or effort to understand and apply.  See <u>United States v. Boyle</u>, <u>supra</u> at 251-252.  Accordingly, where the taxpayer delegates the preparation of her income tax return to a tax return preparer, the taxpayer has a duty to provide the tax return preparer with all relevant information necessary to prepare the return, see <u>Pessin v. Commissioner</u>, 59 T.C. 473, 489

(1972); <u>Jaques v. Commissioner</u>, <u>supra</u>, and to review her completed tax return before signing it. See <u>Biederstadt v. Commissioner</u>, T.C. Memo. 1989-235; see also <u>Pervier v. Commissioner</u>, T.C. Memo. 1989-344.

We are not convinced that petitioner provided all relevant information necessary for her accountant properly to prepare her returns. Respondent's tax auditor testified that petitioner's representative (who prepared her returns) initially told him that there were no sources of nontaxable income. That conflicts with petitioner's position in this case, at least with respect to the NCNB deposit, that the NCNB deposit was the proceeds of loans or gifts from her children. Petitioner failed to call her accountant or show that he was unavailable, from which we draw the inference that his testimony would have been adverse to petitioner. See <u>Wichita Terminal Elevator Co. v. Commissioner</u>, 6 T.C. 1158, 1165 (1946)("the failure of a party to introduce evidence within his possession and which, if true, would be favorable to him, gives rise to the presumption that if produced it would be unfavorable"), affd. 162 F.2d 513 (10th Cir. 1947).

Petitioner has failed to carry her burden of proving that she was not negligent with respect to her 1992 and 1993 returns. See Rule 142(a).

<u>Decision will be entered</u>

<u>for respondent</u>.